**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| GETTYS BRYANT MILLWOOD and JOHN BAKER MCCLANAHAN, PERSONAL REPRESENTATIVE OF THE ESTATE OF MELISSA BUCHANAN, on behalf of themselves and all others similarly situated,<br><br>                               Plaintiffs,<br>vs.<br><br>STATE FARM LIFE INSURANCE COMPANY,<br><br>                           Defendant. | Civil Action No. 7:19-cv-01445-DCC<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Gettys Bryant Millwood ("Millwood") and John Baker McClanahan as Personal Representative of the Estate of Melissa Buchanan ("Buchanan"), collectively referred to herein as "Plaintiffs," on behalf of themselves and all others similarly situated, bring this Complaint against Defendant State Farm Life Insurance Company ("State Farm" or "Defendant"), and state as follows:

**NATURE OF THE ACTION**

1.    This is a class action brought on behalf of Plaintiffs and similarly situated holders of State Farm universal life insurance policies that were issued on State Farm's "FORM-86040" (the "Subject Policies").

2.    Plaintiffs seek to represent a class of South Carolina and Tennessee consumers who own or owned a Subject Policy and who have been forced to pay unlawful and excessive cost of insurance ("COI") charges to State Farm or its predecessors in interest (the "Classes"). Defendant has caused material harm to Plaintiffs and the Classes by improperly computing the COI charges, thereby diminishing the value of the Subject Policies.

1

3. Plaintiffs' claims and those of the Classes are exclusively supported by the plain written language of the Subject Policies and are not derived from any alleged conversations had, or documents reviewed, at the time of sale. Indeed, the Subject Policies are standardized form contracts, and Plaintiffs and the Classes did not—and were not able to—negotiate any of the terms in these contracts.

4. A principal benefit of universal life policies, such as the Subject Policies, is that, unlike whole life insurance policies that require fixed monthly premium payments, the premiums required are flexible and need only be enough to cover the charges and certain other specified expenses. Any premiums paid in excess of the specified charges are applied to a policy's "Cash Value." In general, the greater the Cash Value, the greater the amount payable by the insurer when the insured dies.

5. The Subject Policies, like all universal life insurance policies, "unbundle" the various charges and expenses charged to the policy owner; that is, the monthly deductions are broken down into an array of discrete charges and credits.[1] State Farm is contractually bound to deduct only those charges that are explicitly identified and authorized by the terms of the Subject Policies.

6. The COI charge is one such charge that insurers, including State Farm, are permitted to take under the terms of universal life policies. The COI charge is calculated using a "COI Rate" and is used to cover the insurer's mortality risk (*i.e.*, the expected probability that the insured will die in a given policy year).[2] Insurers, including State Farm, are also permitted to take an "Expense Charge" under the terms of universal life policies. This Expense Charge is used to reimburse

---

[1] *See* Dictionary of Insurance Terms at 550 (6th ed. 2013) (defining universal life insurance polices as "coverage in which the investment features, mortality element and cost factors of a life insurance policy are separated, permitting each part to be independently analyzed"); *see also, id.* at 557-58.

[2] For that reason, it is commonly referred to in the industry as the "mortality charge" or the "pure cost of protection."

insurers for their cost of administering the universal life insurance policies.

7.    The COI charge is typically the highest monthly charge that a policy holder pays. As a result, the provision in universal life insurance policies explaining how and when COI charges are computed and adjusted is one of the most important terms of these contracts.

8.    Because COI charges are intended to compensate the insurer for mortality risk, insurers—including State Farm—are contractually obligated to compute these charges based on their expectations of future mortality, not their desire to garner a greater profit on the Subject Policies. Thus, when mortality rates are projected to decline because life expectancy is *increasing*, insurers are required to *reduce* their COI charges. Conversely, when mortality rates are projected to go up because life expectancy is *decreasing*, insurers may increase their COI charges, subject to certain requirements and constraints.[3]

9.    Despite unambiguous policy language in its fully integrated agreement, State Farm deducts monthly COI charges from the Subject Policies in excess of amounts specifically permitted by the terms of those policies. Every unauthorized dollar taken from policy owners is one less dollar that can be used to, for example, invest through the Subject Policies, pay future premiums, increase the death benefit, use as collateral for policy loans, or withdraw as cash.

10.    It is well-documented and undisputed that mortality expectations have improved significantly over the past several decades, and the life insurance industry (including State Farm) projects this trend to continue. Notwithstanding these substantially improved mortality expectations, however, State Farm breached its contracts with Plaintiffs and the Classes and abused its contractual discretion by failing to reduce its COI charges.

---

[3]    For example, the Subject Policies set forth "maximum monthly cost of insurance rates" that State Farm is contractually prohibited from exceeding when it adjusts its COI Rates. There is no provision establishing a minimum monthly cost of insurance rate in the Subject Policies.

11.   Policyholders' comfort with this arrangement is due to their trust—and the insurer's contractual commitment—that the insurer will dutifully decrease COI charges to reflect improved life expectancy (*i.e.*, reduced projected mortality).

12.   State Farm, however, has been abusing this trust and breaching its contractual commitments by (a) basing its COI charges on non-permissible considerations, such as lapse rates (i.*e.*, the rate at which insurance policies are cancelled due to the failure to pay the required premiums), and (b) not reducing its COI charges in light of well-established decreased and decreasing mortality rates. These breaches allowed State Farm to convert COI charges from a cost-recovery mechanism into a profit vehicle. By failing to follow its contracts and retaining the difference between its projected mortality expenses and the COI charges incurred by Plaintiffs and the Classes, State Farm has reaped millions of dollars in extra profit.

## **THE PARTIES**

13.   Plaintiff Millwood is a resident of Spartanburg, South Carolina. Plaintiff Millwood entered into a Subject Policy with State Farm (Policy No. LF-0939-2349) with an initial face value of $101,869 that became effective on May 10, 1988 (the "Millwood Policy"). Plaintiff Millwood has always been both the "owner" and the "insured" under the Millwood Policy, State Farm is the effective and liable insurer of the Millwood Policy, and to Plaintiff Millwood's knowledge, State Farm has never reduced the COI charges it deducts from this policy. A copy of the Millwood Policy is attached hereto as **Exhibit A**.[4]

14.   Plaintiff Buchanan Estate is the Estate of Melissa Buchanan, formerly of Jackson, Madison County, Tennessee. Melissa Buchanan entered into a Subject Policy with State Farm (Policy No. LF-1206-8657) with an initial face value of $75,000 that became effective on May 26,

---

[4]      Sensitive personal and health information has been redacted from each of the attached Exhibits.

1999 (the "Buchanan Estate Policy"). Melissa Buchanan passed away on December 3, 2016, and State Farm paid $70,276.09, which was the amount payable at the time of Ms. Buchanan's death with interest; this payment did not release State Farm from liability for the claims alleged herein. Melissa Buchanan was both the "owner" and the "insured" under the Buchanan Estate Policy, State Farm was the effective and liable insurer of the Buchanan Estate Policy, and to Plaintiff Buchanan Estate's knowledge, State Farm has never reduced the COI charges it deducts from this policy. A copy of the Buchanan Estate Policy is attached hereto as **Exhibit B**.[5]

15. Defendant State Farm is a life insurance company organized and existing under the laws of the State of Illinois, and maintains its principal place of business in Bloomington, Illinois. Defendant is authorized to transact business within the State of South Carolina (SC Co. Code #100374; NAIC Co. Code #69108).

## JURISDICTION AND VENUE

16. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity between at least one class member (including Plaintiffs) and one defendant and the aggregate amount of damages exceeds $5,000,000. This action therefore falls within the original jurisdiction of the federal courts pursuant to the Class Action Fairness Act, 28 U.S.C § 1332(d).

17. This Court has personal jurisdiction over State Farm because it is licensed to sell insurance in this District and because it sold the Subject Policies to residents of this District, including Plaintiff Millwood.

18. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because the events

---

[5] Because the named Plaintiffs' universal life insurance policies are Subject Policies, references herein to the Subject Policies refer jointly to the Millwood Policy, the Buchanan Estate Policy, and the Subject Policies held by the Classes.

giving rise to Plaintiff Millwood's cause of action occurred in this District.

## FACTUAL ALLEGATIONS

### A.     The Subject Policies

19.     State Farm issued the Subject Policies in the United States using standardized contracts (notated as FORM-86040) between roughly January 1, 1986 and December 31, 1993. During this period, State Farm issued roughly 937,330 universal life policies in the United States using FORM 86040. On information and belief, State Farm continues to accept payments on the Subject Policies from roughly 400,000 policyholders in the United States, including Plaintiff Millwood.

20.     The Subject Policies' terms are not subject to individual negotiation and are materially the same across the Classes. The terms also cannot be altered by an agent's representations at the time of sale, and any endorsements, amendments, or riders must be signed by an officer to be valid.

21.     State Farm has administered and currently administers all aspects of the Subject Policies. In this capacity, State Farm has collected (and continues to collect) premiums from consumers. State Farm also unilaterally set, assessed, and deducted policy charges, including the COI charge, on the Subject Policies.

22.     Under the terms of the Subject Policies, the policy owners make premium payments to State Farm, and State Farm deducts the monthly charges authorized by the policies. The remaining amount is then deposited into the Cash Value component. Because the Cash Value component earns interest, policy holders can use the Cash Value as an investment.

23.     The funds in Cash Value belong to the policy owner. State Farm holds these funds in trust for the policy owners and may only access or withdraw these funds as expressly authorized by the Subject Policies.

24.     The Subject Polices, including the Millwood and Buchanan Estate Policies (Exs. A &

B at 9), authorize State Farm to take a "Monthly Deduction" from the Cash Value of each policy each month. The Subject Policies expressly define the Monthly Deduction as follows:

> **Monthly Deduction.** This deduction is made each month, whether or not premiums are paid, as long as the cash surrender value is enough to cover that monthly deduction. Each deduction includes:
> (1)   the cost of insurance,
> (2)   the monthly charges for any riders, and
> (3)   the monthly expense charge.

25.   The Subject Policies, including the Millwood and Buchanan Estate Policies, set the "monthly expense charge" at a specific dollar amount. In the case of the Millwood and Buchanan Estate Policies, the expense charge is set at $4.00. *See* Exs. A & B at 3.

26.   The Subject Policies, including the Millwood and Buchanan Estate Policies (Exs. A & B at 10), also expressly define how the COI charge is determined and calculated:

> **Cost of Insurance.** This cost is calculated each month. The cost is determined separately for the Initial Basic Amount and each increase in Basic Amount. The cost of insurance is the monthly cost of insurance rate times the difference between (1) and (2), where:
> (1)   is the amount of insurance on the deduction date at the start of the month divided by 1.0032737, and
> (2)   is the account value on the deduction date at the start of the month before the cost of insurance and the monthly charge for any waiver of monthly deduction benefit rider are deducted.
> Until the account value exceeds the Initial Basic Amount, the account value is part of the Initial Basic Amount. Once the account value exceeds that amount, if there have been any increases in Basic Amount, the excess will be part of the increases in order in which the increases occurred.

27.   The Subject Policies, including the Millwood and Buchanan Estate Policies (Exs. A & B at 10), explicitly establish the factors State Farm may use to determine "Monthly Cost of Insurance Rates" (the "COI Rates"), which are in turn used to calculate the COI charge (as set forth above) that is deducted from the Cash Value each month:

> **Monthly Cost of Insurance Rates.** These rates for each policy year

7

> are based on the Insured's age on the policy anniversary, sex, and applicable rate class. A rate class will be determined for the Initial Basic Amount and for each increase. The rates shown on page 4 are the maximum monthly cost of insurance rates for the Initial Basic Amount. Maximum monthly cost of insurance rates will be provided for each increase in the Basic Amount. We can charge rates lower than those shown. Such rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates. Such adjustments cannot be made more than once a calendar year.

28.   Thus, under the explicit terms of the Subject Policies, State Farm is authorized only to use the Insured's age, sex, applicable rate class, and projected changes in mortality when determining the Subject Policies' COI Rates.

29.   Indeed, State Farm has previously admitted that a rate "based on" factors explicitly identified in the Subject Policies must be determined using only those identified factors. For example, in *Alleman v. State Farm Life Insurance Co.*, 334 Fed. App'x 470, 472 (3rd Cir. 2009), the court affirmed summary judgment in State Farm's favor and rejected the plaintiff's argument that a provision in a life insurance policy stating that a charge would be "based on the Insured's age last birthday and sex" should be read to include other undisclosed factors because, "[b]y the plain language of these policies, it is clear that the insureds' age and sex are the only mortality factors relevant to that rate . . . ."

30.   Recently, the United States District Court for the Western District of Missouri, reviewing the language in a later issued policy but with language identical to that at issue here, determined that "no reasonable lay person would expect that State Farm was permitted to use any factor it wanted to calculate the cost of insurance. While an insurance company would be expected to make a profit, the terms of the insurance policy at issue are so dense, ***a lay person would not understand that State Farm expected to derive profit from the COI.***" *Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2018 WL 1747336, at *4 (W.D. Mo. Apr. 10, 2018) ("*Vogt*")

(emphasis added).

31.  As the above establishes, the "Expense Charge" and the "charges for any riders" are the only means by which State Farm was contractually permitted to earn a profit margin on the Subject Policies; the cost of insurance charge was intended to reimburse solely State Farm for its mortality risk.

**B.      State Farm, in Breach of its Contracts with Plaintiffs and the Classes, Considered Impermissible Factors in Setting the COI Rates**

32.  Age, sex, and rate class are factors commonly used within the life insurance industry to determine the mortality expectations of an insured or group or class of insureds.

33.  An insured would reasonably read age, sex, and rate class, in combination with the disclosure that rates can only be adjusted for "projected changes in mortality," and understand that mortality expectations are the sole bases upon which State Farm can determine COI Rates.

34.  By specifically identifying age, sex, and rate class as the defining components of the COI Rate, Plaintiffs and the Classes on the one hand, and State Farm on the other, agreed that mortality expectations are what determines the COI Rates under the Subject Policies. This is further confirmed where the Subject Policies states that "[s]uch rates can be adjusted for projected changes in mortality." Exs. A & B at 10.

35.  Notwithstanding the clear terms of the Subject Policies limiting the factors State Farm may consider in determining the COI Rates, State Farm uses other factors, which are not authorized by the Subject Policies, when determining these rates, including but not limited to the following:

      a.   Expense experience;

      b.   Persistency;

      c.   Taxes;

      d.   Profit assumptions;

      e.   Investment earnings;

      f.   Capital and reserve requirements; and

      g.   Other unspecified factors.

36. By including these impermissible factors in the calculation of its COI Rates, State Farm knowingly caused the COI Rates to be higher than what is explicitly authorized under the terms of the Subject Polices, thereby assessing COI charges to the owner's premiums in amounts greater than those authorized in the Subject Policies. This reduced the monies deposited into the Cash Accounts (which also reduced the amount of money earning interest), causing a substantial financial injury to Plaintiffs and the Classes.

37. As an additional consequence of State Farm knowingly charging COI Rates higher than what was authorized by the Subject Policies, some Class members' Cash Values were so depleted that State Farm cancelled their policies, thereby depriving them of their insurance proceeds (even after years of payment).

38. As a direct and proximate result of State Farm's breach, Plaintiffs and the Classes have been damaged and those damages are continuing in nature in that State Farm has deducted and will continue to deduct expenses, including without limitation, maintenance, administrative, and other expenses, from the Cash Values of Plaintiffs and the Classes in amounts not authorized by the Subject Policies.

**C.**     **<u>State Farm, in Breach of its Contracts with Plaintiffs and the Classes and the Implied Covenant of Good Faith and Fair Dealing, Failed to Reduce its COI Charges</u>**

39. The above language contractually requires State Farm to reduce its COI Rates when its expectations of future mortality improve.

40. As shown below, State Farm, in breach of its contracts with Plaintiffs and the Classes, did not do so.

41. That monthly COI Rates are based on sex, age, and rate class means that State Farm was required to determine the COI Rates by reference to mortality tables. Mortality tables are charts showing the rate of death (either as a percentage or as the number of deaths per thousand individuals) at a given age. There are separate mortality tables for males and females, tobacco-use, underwriting status, and duration since underwriting. Actuaries and insurers use mortality tables to calculate insurance rates and are intended to reflect expectations of future mortality.

42. Beginning at least as early as 1941, the National Association of Insurance Commissioners ("NAIC") has periodically issued a series of Commissioners Standard Ordinary ("CSO") mortality tables. These are industry standard mortality tables that are commonly used by insurers to calculate reserves and to set maximum permitted cost of insurance rates in universal life insurance policies.

43. The 1980 table issued by the NAIC was called the 1980 Commissioners Standard Ordinary Smoker or Nonsmoker Mortality Table ("1980 CSO Mortality Table"). That table was the industry-standard table until 2001.

44. In 2001, at the request of the NAIC, the Society of Actuaries ("SOA") and the American Academy of Actuaries (the "Academy") produced a proposal for a new CSO Mortality Table. The accompanying report from June 2001 explained that (a) the 1980 CSO Mortality Table was still the industry-standard table and (b) expected mortality rates had improved significantly each year since the 1980 table issued. The report stated: "The current valuation standard, the 1980 CSO Table, is almost 20 years old and mortality improvements have been evident each year since it was adopted. . . . [C]urrent mortality levels . . . are considerably lower than the mortality levels underlying the 1980 CSO Table.[6] The report further explained that "[f]or most of the commonly

---

[6]     *Report of the American Academy of Actuaries' Commissioner's Standard Ordinary (CSO) Task Force*, Presented to the National Association of Insurance Commissioners' Life and Health Actuarial Task

11

insured ages (from about age 25 to age 75), the proposed 2001 CSO Table mortality rates are in the range of 50% to 80% of the 1980 CSO Table."

45.   This means the tables are showing a substantial improvement in mortality in a 20-year time-period. These mortality improvements represent a substantial benefit that State Farm should have passed on to Plaintiffs and the Classes. The final proposed tables were adopted as the 2001 Commissioners Standard Ordinary Mortality Table ("2001 CSO Mortality Table"). The 2001 CSO Mortality Table reflected vastly improved mortality experience as compared to the 1980 CSO Mortality Table.

46.   Since the 2001 CSO Mortality Tables were published, the SOA and the Academy have periodically published, from surveys of life insurers, new tables showing continued consistent and significant mortality improvement. For example, the Academy's 2015 report observed: "The current CSO table was created in 2001 based on experience from 1990-1995 and thus, is at least 20 years old. ***Since that time, industry experience studies performed by the Society of Actuaries Individual Life Experience Committee (ILEC) have shown significant improvement in the mortality rates experienced by the industry from that underlying the 2001 CSO table development***."[7]

47.   Other surveys of insurers conducted by the SOA between 2002 and 2009 also show that mortality has steadily decreased since issuance of the 2001 CSO Mortality Table. For instance,

---

Force (LHATF), June 2001, available at http://www.actuary.org/pdf/life/cso2_june01.pdf.

[7]     Am. Academy of Actuaries, *Report on the 2017 CSO and 23017 CSO Preferred Structure Table Development* (Oct. 2018), https://www.soa.org/Files/Research/Exp-Study/research-2017-cso-report.pdf (emphasis added).

the SOA published Individual Life Experience Reports for the periods 2002-2004,[8] 2005-2007,[9] 2008-2009,[10] and 2009-2013,[11] each of which showed strong rates of improvement in mortality. State Farm was one of the surveyed companies included in each of these studies.

48. The SOA also periodically publishes updated mortality tables that reflect insurers' changing experience, including (a) 1990-95 Basic Select and Ultimate Mortality Tables;[12] (b) 2001 Valuation Basic Mortality Table;[13] (c) 2008 Valuation Basic Table;[14] and (d) 2015 Valuation Basic Table.[15] Consistent with the foregoing, these tables confirm that mortality continued to improve substantially since issuance of the Subject Policies.

49. Other surveys have also noted significant improvements in mortality expectations. In May of 2013, for instance, the reinsurance company RGA published a report sponsored by the SOA enumerating mortality rates and mortality improvements at older ages.[16] This study, which

---

[8]    Society of Actuaries, *Report of the Individual Life Insurance Experience Committee Mortality under Standard Individually Underwritten Life Insurance Between 2002 and 2004 Policy Initiatives* (Dec. 2004), https://www.soa.org/resources/experience-studies/2005-2009/02-04-iindividual-life-exp-rpt/.

[9]    Society of Actuaries, *Report of the Individual Life Insurance Experience Committee Mortality for Standard Individually Underwritten Life Insurance Between 2005 and 2007 Policy Anniversaries* (Feb. 2010), https://www.soa.org/resources/experience-studies/2010/2005-2007-ind-life-report/.

[10]    Society of Actuaries, *2008-09 Report of the Individual Life Insurance Experience Committee* (April 2013), https://www.soa.org/experience-studies/2017/2009-13-indiv-life-ins-mort-exp/.

[11]    Society of Actuaries, *2009-2013 Individual Life Insurance Mortality Experience Report* (Oct. 2017), https://www.soa.org/experience-studies/2013/research-2008-2009-ind-life-exp/.

[12]    Society of Actuaries, *1990-95 Basic Select and Ultimate Mortality Tables for Individual Life Insurance*, https://www.soa.org/experience-studies/2000-2004/90-95-basic-select/.

[13]    Society of Actuaries, *Final Report of the Individual Life Insurance Valuation Mortality Task Force 2001 – Valuation Basic Mortality Table [2001 VBT]* (April 2005), https://www.soa.org/experience-studies/2005-2009/final-report-life-insurance-valuation/.

[14]    Society of Actuaries, *2008 Valuation Basic Tables [VBT] Report* (June 16, 2009), https://www.soa.org/experience-studies/2005-2009/2008-vbt-report-tables/.

[15]    Society of Actuaries, *2015 Valuation Basic Report and Tables* (Sept. 13, 2018), https://www.soa.org/experience-studies/2015/2015-valuation-basic-tables/.

[16]    Tim Rozar, Catie Muccigrosso, Susan Willeat, RGA, *Report on the Survey of Older Age Mortality and Other Assumptions* (May 2013), https://www.rgare.com/docs/default-source/default-document-

was based on a survey of insurance companies—including State Farm—showed material rates of mortality improvements. As another example, in March 2014 the actuarial firm Milliman published a report sponsored by the SOA—also based on a survey of insurance companies that included State Farm—called the "Select Period Mortality Survey," that confirmed that select rates of mortality improved significantly since 2001.[17]

50.   These mortality improvements that have appeared since the issuance of the Subject Policies represent a substantial financial benefit to State Farm in the form of decreased costs of providing insurance.

51.   State Farm was contractually required to share this financial benefit to its holders of the Subject Policies through decreased COI charges but failed to do so.

52.   At a minimum, State Farm abused its contractual discretion by failing to reduce COI charges. Indeed, the Subject Policies provide: "[The COI] can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates." State Farm is therefore vested with contractual discretion to adjust COI based on "changes in mortality." It abused its contractual discretion by failing to adjust its COI in a manner favorable to Plaintiffs and the Classes in response to mortality improvements.

**D.    State Farm Concealed its Wrongdoing**

53.   Because State Farm did not disclose its mortality expectations or the monthly COI Rates it used to calculate the COI charges, Plaintiffs and the Classes could not have discovered State Farm's breach of the Subject Policies until recently.

54.   Moreover, the nature of Defendant's conduct is such that Plaintiffs and each member

---

library/older-age-mortality.pdf?sfvrsn=dc9ad888_0.

[17]   Allen M. Klein, Michelle L. Krysiak, Milliman, *Select Period Mortality Survey* (March 2014), available at https://www.soa.org/research-reports/2014/research-2014-select-period/.

of the Class would be unaware that State Farm was engaging in wrongdoing by taking inflated charges and improper amounts from Cash Values and failing to reduce COI Rates in light of the substantial improvements in mortality rates. Plaintiffs and the Classes were automatically assessed inflated COI charges but they were not privy to the back-end calculations that caused these charges to be inflated. Defendant possesses the actuarial information and equations underlying the computation of rates and charges for the Subject Polices. The COI Rates actually used to calculate the COI charges are not disclosed to policy owners, nor are the components or factors that comprise those rates. Even if they were, Plaintiffs and the Classes would lack the knowledge, experience, and training to reasonably ascertain how State Farm calculated the rates and charges.

55.    State Farm was aware of its non-disclosure because of its superior knowledge of the aforementioned computations. Concealment of its conduct and failure to disclose its conduct to Plaintiffs and the Classes constitutes fraudulent concealment and therefore tolls the statute of limitations for Plaintiffs and the Classes.

56.    Plaintiffs did not learn of Defendant's breaches supporting Plaintiffs' claims until approximately Spring 2019, when they engaged counsel. Plaintiffs were not at fault for failing to discover the breaches and had no actual or presumptive knowledge of the breaches.

57.    Plaintiffs did not learn that State Farm was breaching the Subject Policies because the facts showing breach were not reasonably discoverable by Plaintiffs nor was the harm that was caused by State Farm's breaches.

## CLASS ACTION ALLEGATIONS

58.    This action is brought by Plaintiffs individually and on behalf of a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

59.    The Classes are defined as follows:

Class 1:

All persons who own or owned a universal life insurance policy issued by State Farm Life Insurance Company on FORM-86040 in the State of South Carolina.

Class 2:

All persons who own or owned a universal life insurance policy issued by State Farm Life Insurance Company on FORM-86040 in the State of Tennessee.

60.  Excluded from the Classes are State Farm, its officers and directors, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

61.  ***Numerosity.*** The Classes consists of hundreds or thousands of consumers of life insurance and are thus so numerous that joinder of all members is impracticable.

62.  ***Ascertainability.*** The identities and addresses of all members of the Classes can be readily ascertained from State Farm's business records.

63.  ***Typicality.*** The claims asserted by Plaintiffs are typical of the claims of members of the Classes inasmuch as State Farm breached its contracts with Plaintiffs and with members of the Classes in the same manner: by considering extra-contractual factors when determining the COI charges and by failing to reduce the COI Rates to reflect falling mortality rates.

64.  ***Adequacy.*** Plaintiffs will fairly and adequately protect the interests of the members of the Classes and do not have any interests antagonistic to those of the other members of the Classes. In addition, Plaintiffs have retained attorneys who are knowledgeable and experienced in class and complex litigation.

65.  ***Commonality and Predominance.*** Common questions of law and fact affecting members of the Classes predominate over any individualized issues. These predominating common questions include the following:

        a.      Whether State Farm is permitted by the Subject Policies to use factors other than those disclosed in the Subject Policies to determine the COI

16

Rates used to calculate the policy deductions;

b.     Whether State Farm used, added, or included factors not specified in the Subject Policies when determining the COI Rates used to calculate the COI charges or deductions;

c.     Whether State Farm added or included factors unrelated to its mortality expectations in setting and determining rates that the Subject Policies provide are "based on" specified mortality factors and no other disclosed factors;

d.     Whether State Farm's expectations as to future mortality experience have improved;

e.     Whether State Farm was required to decrease the COI Rates it imposed on Plaintiffs and members of the Classes in light of improved mortality;

f.     Whether State Farm breached the terms of the Subject Policies and/or abused its discretion under the Subject Policies;

g.     Whether Plaintiffs and members of the Classes sustained damages as a result of State Farm's breaches of the Subject Policies;

h.     Whether Plaintiffs and members of the Classes are entitled to damages, restitution, and/or other relief as a remedy for State Farm's breaches of the Subject Policies; and

i.     Whether Plaintiffs and members of the Classes are entitled to declaratory relief stating the proper construction and/or interpretation of the Class Policies.

66. *Superiority.* A class action is superior to other available methods for the fair and

efficient adjudication of this controversy for at least the following reasons:

a.    The complexity of issues involved in this action and the expense of litigating the claims, means that few, if any, class members could afford to seek legal redress individually for the wrongs that defendant committed against them, and absent class members have no substantial interest in individually controlling the prosecution of individual actions;

b.    This action will cause an orderly and expeditious administration of the class claims and foster economies of time, effort and expense, and ensure uniformity of decisions;

c.    Without a class action, many class members would continue to suffer injury, and State Farm's violations of law will continue without redress while defendant continues to reap and retain the substantial proceeds of their wrongful conduct; and

67.    ***Manageability.*** This action does not present any undue difficulties that would impede its management by the Court as a class action.

## FIRST CLAIM FOR RELIEF: BREACH OF CONTRACT

68.    Plaintiffs reallege and incorporate herein the allegations of the paragraphs above of this Complaint as if fully set forth herein.

69.    This claim is brought on behalf of Plaintiffs and the Classes.

70.    The Subject Policies are binding and enforceable contracts.

71.    State Farm breached its contracts with Plaintiffs and the Classes by (a) basing its COI charges on non-permissible considerations, such as lapse rates, and (b) not reducing its COI charges in light of the well-established decreased mortality rates.

18

72. By so doing, State Farm knowingly caused the COI charges to be higher than what is explicitly authorized by the Subject Policies.

73. Plaintiffs and the Classes have performed all of their obligations under the policies, except to the extent that their obligations have been excused by State Farm's conduct as set forth herein.

74. As a direct and proximate cause of State Farm's material breaches of the policies, Plaintiffs and the Classes have been—and will continue to be—damaged as alleged herein in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF:**
**BREACH OF THE CONVENANT OF GOOD FAITH & FAIR DEALING**

75. Plaintiffs incorporate and restate by reference all of the preceding allegations as though fully set forth herein.

76. This claim is brought on behalf of Plaintiffs and the Classes.

77. The Subject Policies are binding and enforceable contracts.

78. Each of the contracts include an implied covenant that State Farm will act in good faith and deal fairly with Plaintiffs, and that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

79. State Farm breached the implied covenant of good faith and fair dealing with Plaintiffs and the Classes by not reducing its COI charges in light of the well-established decreased mortality rates. As a consequence thereof, Plaintiffs and the Classes suffered financial losses and were, therefore, injured.

80. State Farm's decision to not reduce its COI charges in light of the well-established decreased mortality rates also frustrated the purposes of the COI charge clauses of Subject Policies, which was to reimburse State Farm for its actual mortality risk.

81. As a direct and proximate cause of these breaches of the implied covenant of good faith and fair dealing and of State Farm's frustration of the purposes of the COI charge clauses of the Subject Policies, Plaintiffs and the Classes have been damaged as alleged herein in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF:
## CONVERSION

82. Plaintiffs incorporate and restate by reference all of the preceding allegations as though fully set forth herein.

83. This claim is brought on behalf of Plaintiffs and the Classes.

84. Plaintiffs and the Classes had a property interest in the funds State Farm deducted from their Cash Values in excess of the amounts permitted by the terms of the Subject Policies.

85. By deducting COI Charges and Expense Charges in unauthorized amounts from the Cash Values of Plaintiffs and the Classes, State Farm misappropriated or misapplied specific funds placed in the custody of State Farm for the benefit of Plaintiffs and the Classes for use consistent with the terms of the Subject Policies, without authorization or consent, and diverted those funds for its own use.

86. As a direct and proximate result of State Farm's conduct, Plaintiffs and the Classes have been damaged.

87. Although requiring expert testimony, the amounts of unauthorized COI Charges and Expense Charges State Farm took from Plaintiffs and the Classes are capable of determination, to an identified sum, by comparing Plaintiff's actual COI Charge each month to a COI Charge computed using a Monthly COI Rate determined using the mortality factors disclosed in the Subject Policies.

88. On behalf of themselves and the Classes, Plaintiffs seek all damages and consequential

damages proximately caused by State Farm's conduct.

89.  State Farm intended to cause damage to the Plaintiffs and the Classes by deducting more than it was authorized to deduct from their Cash Values. Its conduct was, therefore, malicious and State Farm is also guilty of oppression in that its systematic acts of conversion subject Plaintiffs and the Classes to cruel and unjust hardship in conscious disregard of their rights. Plaintiffs and the Classes are therefore entitled to punitive or exemplary damages.

## FOURTH CLAIM FOR RELIEF:
## DECLARATORY RELIEF

90.  Plaintiffs reallege and incorporate herein the allegations of the paragraphs above of this Complaint as if fully set forth herein.

91.  This claim is brought on behalf of Plaintiffs and the Classes.

92.  An actual controversy has arisen and now exists between Plaintiffs and the Classes, on the one hand, and State Farm, on the other, concerning the respective rights and duties of the parties under the Subject Policies.

93.  Plaintiffs contend that State Farm has breached the Subject Policies in the following respects: by (a) basing its COI charges on non-permissible considerations, such as lapse rates, and (b) not reducing its COI charges in light of the well-established decreased mortality rates.

94.  Plaintiffs therefore seek a declaration of the parties' respective rights and duties under the Subject Polices and requests the Court to declare the aforementioned conduct of State Farm as unlawful and in material breach of the Subject Policies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray for judgment as follows:

A.  Certifying this action for class treatment pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.   Awarding Plaintiffs and the Classes compensatory and consequential damages in an amount to be proven at trial;

C.   Awarding Plaintiffs and the Classes pre-judgment and post-judgment interest, as well as attorneys' fees and costs, at the maximum rate allowed by law;

D.   Issuing a declaration that State Farm's ongoing conduct asserted herein is in material breach of the Subject Policies; and

E.   Awarding Plaintiffs and the Class such other relief as this Court may deem just and proper under the circumstances.

## **<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs and the Classes hereby demand a trial by jury as to all issues so triable.

Dated: May 17, 2019

Respectfully submitted,

*/s/ David M. Wilkerson*
DAVID M. WILKERSON
SC Federal ID# 7188
The Van Winkle Law Firm
11 N. Market Street
Asheville, NC 28801
Phone: 828-258-2991
Fax: 828-257-2767
dwilkerson@vwlawfirm.com

James J. Pizzirusso*
Nathaniel C. Giddings*
HAUSFELD LLP
1700 K Street, NW
Washington, DC 20006
Tele: 202-540-7200
Fax: 202-540-7201
Email: jpizzirusso@hausfeld.com
Email: ngiddings@hausfeld.com

Jeffrey Kaliel*
Sophia Goren Gold*
Kaliel PLLC
1875 Connecticut Avenue NW, 10th Floor
Washington, DC 20009
202-350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

Larry D. Lahman*
Roger L. Ediger*
MITCHELL DeCLERCK
202 West Broadway Avenue
Enid, Oklahoma 73701
Tel.: 580-234-5144
Fax: 580-234-8890
Email: larry.lahman@sbcglobal.net
Email: rle@mdpllc.com

George Brandt, III
Fed. Bar No. 01451
HENDERSON, BRANDT & VIETH, P.A.
360 E. Henry St., Suite 101
Spartanburg, SC 29302
Phone: 864-583-5144
Fax: 864-582-2927
gbrandt@hbvlaw.com

*Attorneys for Plaintiffs*

---

\*Pro hac vice application to be filed.