**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| GETTYS BRYANT MILLWOOD AND JOHN BAKER MCCLANAHAN, PERSONAL REPRESENTATIVE OF THE ESTATE OF MELISSA BUCHANAN, on behalf of themselves and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>STATE FARM LIFE INSURANCE COMPANY,<br><br>    Defendant. | Civil Action No. 7:19-cv-01445-dcc |

## JOINT STATUS REPORT

Pursuant to this Court's February 11, 2021 order (ECF No. 64), Plaintiffs Gettys Bryant Millwood and John Baker McClanahan, Personal Representative of the Estate of Melissa Buchanan ("Plaintiffs"), and Defendant State Farm Life Insurance Company ("State Farm" or "Defendant," and with Plaintiffs, the "Parties") submit this Joint Status Report for the month of June.

The Parties update the Court as issues identified below as follows:

  **1.  Transactional Data for Class members**

As discussed in prior status conferences and at the hearing on Plaintiffs' motion to compel, the parties were unable to reach agreement as to Plaintiffs' request that State Farm produce transactional data in a format different from that in which it is maintained and in which State Farm previously produced the data in this case and prior cases. Plaintiffs filed a motion to compel on April 16, 2021; State Farm filed its response on April 30, 2021; and Plaintiffs filed their reply on

May 7, 2021. The Court held a hearing on this motion at 2:00 p.m. Eastern on May 20, 2021 and urged the parties to further meet and confer regarding the policyholder data issue and report in this status report. The parties report as follows:

**Plaintiffs' Report re: Transactional Data:**

Following the May 20, 2021 hearing, Defendant confirmed it would not produce the transactional data for class members in the format requested by the Plaintiffs, and instead produced the data the same way they produced it in other cost of insurance cases.

On May 21, 2021, State Farm wrote to Plaintiffs requesting an exemplar file or document showing the format in which Plaintiffs requested the data and promised to provide the complete set of account history by June 1, 2021. State Farm produced the remainder of the electronically available account history on May 28, 2021. Plaintiffs provided the Netting Example State Farm requested on May 31, 2021. On June 3, 2021, Plaintiffs followed up to their May 31 email providing the Netting Example asking State Farm to respond prior to the June 7, 2021 deadline to provide an update to the Court, and requesting State Farm have Mr. Joe Witte articulate the burden in providing the account history in the netted format.[1] This explanation of burden remains outstanding.

On June 4, 2021, Plaintiffs followed up with further questions to State Farm, including identifying documents that were password protected within the production, asking State Farm to confirm that SFLICMW00407043 and SFLICMW00407045 and SFLICMW00407044 and SFLICMW00407046 are duplicates, and identifying policies that did not appear to have

---

[1] In its May 21, 2021 email, State Farm represented that Mr. Witte had explained in his February 2020 30(b)(6) deposition that State Farm's data systems are different from others in the insurance industry. In addition, State Farm attached a declaration from Mr. Witte to their Response to Motion to Compel Production of Transaction Data. ECF No. 84.

2

corresponding PMR records and asking State Farm to clarify where those records could be found, or to produce them. State Farm clarified the duplication issue and asked for clarification as to the missing PMR records including which state the respective policies are from.

On June 7, 2021, Plaintiffs provided that clarification, identifying the missing policy numbers from the PMR and indicating that some of them have more than one state code. Plaintiffs also pointed out that when the transaction data was extracted and produced to them, State Farm combined the LST_TRNO and the LST_TRND field to create the LST_TROD field, and suggested State Farm ask Mr. Witte how difficult this kind of coding for extraction would be for netting out reversal payments. State Farm answered Plaintiffs questions regarding the "LST_TRNO" (last transaction office) and "LST_TRND" (last transaction date), explaining that these are stored together in the system, but Mr. Witte had broken them into two items for ease of date readability in Excel, and stated they would investigate Plaintiffs remaining questions.

On June 8, 2021, Plaintiffs sent State Farm a list of nine questions about the CR ACCT Transaction Codes and a question about the DBT ACCT Transaction Codes. On June 11, 2021, State Farm sent a letter purporting to answer all of Plaintiffs remaining questions, which Plaintiffs are still evaluating.

Plaintiffs' position is that much of this back and forth could have been avoided if State Farm had simply agreed to produce this data to Plaintiffs netted, as Plaintiffs requested. Plaintiffs are still analyzing the approximately 45 million transactions provided and will likely have additional questions as they continue this process. However, in accordance with the Court's guidance, the Parties are working together in good faith in and plan to meet and confer again on this topic early next week.

Defendant's Position

At the hearing on Plaintiffs' motion to compel transactional data, the Court presented several questions to counsel to aid understanding. Those questions were: (1) does State Farm maintain its transactional data in the ordinary course of business in the summary, "netted" format that Plaintiffs request; (2) if Plaintiffs' counsel are correct that other insurers in the industry who have worked with Plaintiffs' proffered expert maintain their data in a summary, "netted" format, why doesn't State Farm maintain its data that way; and (3) can State Farm's transactional data be converted or manipulated and produced in Plaintiffs' preferred manner without any significant addition to the difficulty or complexity of the process for State Farm? By way of update for this case status report, State Farm responds to those questions below and provides additional context for the Court to assist with the resolution of this issue.

**(1) State Farm does not maintain its transactional data in the ordinary course of business in the summary, "netted" format that Plaintiffs request.**

The answer to the first question is "no." Having seen Plaintiffs' requested and preferred exemplar format, State Farm does not maintain its transactional data in that format or anything resembling that format and does not use it in that format or any similar format in the ordinary course of business. Put simply, there is no existing "document" for State Farm to produce, because State Farm does not maintain the at-issue documents that Plaintiffs seek. **Declaration of Joe Witte**, ¶ 5.

Federal Rule of Civil Procedure 34 states plainly that State Farm is required to produce documents as they are maintained in the ordinary course of business or in a reasonably usable form:

> (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms *in which it is ordinarily maintained or in a reasonably usable form or forms*; and

(iii) *A party need not produce the same electronically stored information in more than one form*.

State Farm has fulfilled this obligation in two ways. State Farm first fulfilled this obligation by producing every filed of data it maintains in its policyholder Account History (the transactional data) in full, in the "delimited ASCII flat text file or similar electronic format" requested by Plaintiffs. **Witte Dec.** ¶ 10. This standard production format is reasonably usable by all parties. Plaintiffs do not dispute that the data as provided was in the format they requested, reflected the data points maintained by State Farm in the ordinary course of business, and was reasonably usable. In fact, the Account History policyholder data has been produced in precisely the same format in other cost of insurance cases and used by experts and counsel to litigate the case. This production was more than enough to comply with Rule 34.

Nonetheless, State Farm took the additional step of providing a detailed interrogatory response to explain the data points maintained by State Farm, as well as a letter dated June 11, 2021 answering certain questions posed by Plaintiffs' counsel about the data. Again, Plaintiffs and their expert in three other cost of insurance cases have utilized policyholder transactional data in precisely the format in which State Farm produced it here through class certification briefing and to take one through trial.

State Farm does not create reports that summarize this data in the manner Plaintiffs would prefer in the ordinary course of its business. **Witte Dec**. ¶ 5, 8. It does not create monthly transactional reports or other similar monthly statements for policyholders. It does not create monthly reports of the transactions for each UL policy to management. And it has no existing script or program with which it could create such reports. State Farm has never had a business need to run this type of report for groups of policyholders in the summary, "netted" format Plaintiffs' counsel describes, and State Farm has not done so previously.

**(2) Why isn't State Farm's data the same as what Plaintiffs claim other carriers use?**

State Farm does not use the same data repositories that other insurance carriers may use. State Farm custom built its proprietary policyholder data systems for its own business needs in the 1970s and 1980s. **Witte Dec**. ¶ 4. These repositories are designed to provide annual—not monthly—reports to policyholders.

**(3) State Farm's transactional data cannot be converted, manipulated, and/or produced in Plaintiffs' preferred manner without significant addition to the difficulty or complexity of the process for State Farm.**

Providing the transactional data to Plaintiffs in the requested format would require State Farm to create new software, scripts, and documents from whole cloth using the same data that has already been provided to Plaintiffs' counsel. The burdensome process State Farm would have to undertake to determine whether and how new data points could be created from State Farm's business records to conform to Plaintiffs' preferences would be the same process Plaintiffs' own experts can attempt to do with the data Plaintiffs already have—namely, use commercially available tools to accomplish the same thing. Plaintiffs' experts in the other COI litigation have done exactly that to create the class-wide damage models they have submitted to the Court.

The underlying individual transactional records that State Farm maintains in the ordinary course of business and would use to create this type of report has already been provided to Plaintiffs' counsel, in the format that Plaintiffs requested. **Witte Dec**. ¶ 10. Plaintiffs already provided State Farm with an example of the type of report they want to create by retabulating the data that State Farm produced to them. **Witte Dec**. ¶ 5. There is no technical reason why Plaintiffs cannot take the complete set of data that State Farm has already produced and create any reports that they wish, in the format they prefer. **Witte Dec**. ¶ 11. Although this process may not be simple, the data can be analyzed by anyone using the same commercially available tools, as was

done in the prior cost of insurance litigation where the plaintiffs' counsel and experts used Excel to analyze the produced data.  Likewise, in this case, Plaintiffs' counsel and experts can use similar tools to analyze the data in whatever method Plaintiffs or their experts wish, as done in prior cases.  Again, State Farm fulfilled its obligation under Rule 34 to produce the requested data as it exists in the ordinary course of business and in a reasonably usable format.  That format also happened to be the specific format Plaintiffs had requested.

Neither Rule 34 nor any other rule requires State Farm to generate new reports that it does not have the ability to create using tested and validated business process, or to do Plaintiffs' expert work and data analysis for them.  Critically, Plaintiffs want this work done so that they can prosecute their case.  It is not expert work that State Farm would be generating in order to defend itself.  Plaintiffs are essentially asking State Farm to serve as their expert to defray their own costs and shift their own litigation risks and burdens to State Farm.  Again, the Federal Rules do not permit a party to shift the burden of developing its case in this way—rather, Rule 34 requires only that a defendant produce documents that already exist so that the requesting parties can use those documents to develop their case.

Here, Plaintiffs' proffered expert has not said he is incapable of using the data in the format already produced that has been successfully utilized in three other cost of insurance cases. Plaintiffs' expert is, in fact, in a better position to create the report in the format preferred by him because the creation of this report requires multiple significant assumptions and judgment calls that are part of Plaintiffs' burden in establishing a class-wide damages model and should thus fall on Plaintiffs' expert, not State Farm, consistent with the burden for establishing the propriety of class treatment under Rule 23.

As noted, State Farm also has no script or other program available to transform the transactional data into Plaintiffs' preferred format. **Witte Dec**. ¶ 6. Doing so would require a tedious and cumbersome validation process to determine whether the data could satisfy even minimal reliability standards. **Witte Dec**. ¶ 7. When developing new software, initial assumptions often are incorrect and numerous issues and scenarios will be encountered that will require the building of new and additional programming rules. *Id*. It is highly likely that portions of the data will not come through as expected and cause errors in the data. *Id*. Because State Farm does not create or use the transactional data in this format, there is no defined business process for State Farm to apply to conduct this validation. **Witte Dec.** ¶ 9. Importantly, the fact that it is challenging to analyze data reflecting diverse policyholder experiences across two states over the past thirty years arises from the nature of Plaintiffs' class claims against State Farm, not from any deficiency in the information that State Farm has produced to them.  State Farm is entitled to challenge class certification and the reliability of the work of Plaintiffs' experts.  It is not required by the Federal Rules to create the summary report data that Plaintiffs have requested and do their work for them to State Farm's own detriment.  And it is not proportional to the needs of the case for State Farm to bear this burden when Plaintiffs already have all of the data State Farm utilizes in the ordinary course of its business.

Finally, attempting to develop this summary, "netted" data from scratch would divert valuable hours from other tasks and true business needs.  As with many organizations, State Farm has only recently begun to open its offices for the first time since the COVID-19 pandemic impacted businesses beginning March of 2020.  State Farm is devoting all present Systems resources to existing business functions and needs, including the modernization effort for its life

8

insurance technology systems that is currently underway. Resources would have to be diverted from this effort to attempt to manufacture transactional data in the format Plaintiffs are seeking.

## 2. Privilege Log

State Farm filed its initial privilege log in this case on October 8, 2020, and has provided updated and additional logs since that date, in several cases at the request of Plaintiffs' counsel and in response to issues raised during the parties' meet and confer discussions and correspondence. State Farm provided its most recent updated privilege log to Plaintiffs' counsel on April 23, 2021. After meeting and conferring, the parties initially were unable to resolve Plaintiffs' remaining concerns. Plaintiffs filed a motion on April 28, asserting that State Farm has waived all of its claims of privilege, or in the alternative, a request for *in camera* review and a finding of waiver of a subset of the withheld documents. In the interim time for State Farm to respond, the parties reached agreement on some issues, resulting in Plaintiffs' May 12 filing updating its position on this motion. State Farm filed its response to Plaintiffs' motion to compel on the same day. Plaintiffs' filed their reply on May 19. The Court held a hearing on May 20. The Court gave the parties instructions for further meeting and conferring on privilege issues, and the parties have done so.

The parties held two lengthy meet and confer sessions on June 11, 2021. At the conclusion of this discussion, there were only 11 documents in dispute. On June 16, 2021, State Farm requested and received Plaintiffs' consent to seek an extension to reply to the Plaintiffs' Supplemental Brief on the Motion to Compel related to the Privilege Log, so the Parties had more time to try and resolve the remaining issues.

The Parties met and conferred again on Thursday, June 17, 2021, and were able to resolve all issues raised in the Motion to Compel regarding the Privilege Log. In total, State Farm has

9

withdrawn its claim of privilege over 44 documents and Plaintiffs withdrew their challenges to the rest of the Privilege Log. The Motion to Compel is now moot.

### 3. Mortality Tables Discussed in Carl Streily's Deposition

Plaintiffs' Position

On May 19, 2021, Plaintiffs sent State Farm a letter regarding State Farm's response to Interrogatory No. 2 following the deposition testimony given by Mr. Carl Streily on April 30, 2021. Plaintiffs pointed out that State Farm's response to Interrogatory No. 2[2] stated that "the answer can be determined from the actuarial memoranda that were filed with state regulatory agencies at or around the time that Form 86040 was approved for use. An exemplary copy of the memoranda is attached to these answers as Exhibit A." However, Mr. Streily admitted during his deposition that Exhibit A ***did not*** include the mortality tables used in determining COI rates at the time, and that it did not show all of the issue ages. Because Mr. Streily's deposition testimony raised questions as to whether State Farm's response to Interrogatory No. 2 was deficient, Plaintiffs asked State Farm to supplement the response to include complete tables for all issues and attained ages, and to indicate whether the page titled "Actuarial Memorandum Additional Items, Re: Form 86040, Flexible Premium Adjustment Life Insurance, Percentages Used in the Determined of the Monthly Current Cost of Insurance Rates", accurately gives the "percentages used" for male non-smokers (0% for ages 0-19), and female non-smokers (60% for ages 0-19). Finally, Plaintiffs asked State Farm to confirm that they have asked Mr. Streily to identify and provide the profitability projections he generated on the 86040 policies. Plaintiffs followed up with State Farm about this May 19 letter on May 25 and again on June 3, 2021 but have not yet heard back.

---

[2] Interrogatory No. 2 asked State Farm to describe with particularity all policies, practices or procedures State Farm used, at any time during the relevant time period, to determine the COI rate and/or COI charges for the Subject Policies, including a description of any proposed or implemented changes to that policy, practice, or procedures used during that time frame.

Defendant's Position

Plaintiffs' second interrogatory asked State Farm to "describe with particularity all policies, practices or procedures State Farm used, at any time during the relevant time period to determine the COI rate and/or COI charges for the Subject Policies." Subject to certain objections, State Farm responded that "the answer can be determined from the actuarial memoranda that were filed with state regulatory agencies at or around the time that Form 86040 was approved for use." The explanation of pricing practices that State Farm provided contemporaneously to state regulatory agencies remains a sufficient response to this interrogatory.

In Mr. Streily's deposition, Plaintiffs' counsel inquired about the actuarial memorandum. The memorandum, provided to the New Jersey Department of Insurance, describes the pricing process and includes an excerpt of State Farm's proprietary mortality table at certain ages. The specific proprietary mortality table excerpted in the actuarial memorandum is known as the 78-81 SFL, reflecting mortality experience from 1978 to 1981. This table has been obsolete for decades. Although State Farm already had conducted a thorough search for responsive information, in response to Plaintiffs' request after the Streily deposition State Farm investigated further in an effort to locate the 78-81 SFL Table. These efforts did not locate the 78-81 SFL Table.

State Farm provided this information to Plaintiffs by letter on June 11. Plaintiffs also inquired about the 78-81 SFL table and the June 11 letter during the deposition of Tony Phipps on June 16. Mr. Phipps confirmed that he directed that a thorough search be conducted for the SF78-81 table, but the search did not locate the table.

The remaining two issues in Plaintiffs' statement above do not relate to the mortality tables discussed in Mr. Streily's deposition. As to the issue of the "percentages," the actuarial memorandum accurately recites the percentages used to determine the monthly current cost of

11

insurance rates that State Farm used when the policy was initially offered in January 1986.  As described in the answer to interrogatory 2, "State Farm revised the COI rates it used for policies issued on Form 86040 on four separate occasions: on October 1, 1987; on November 1, 1990; on January 1, 2002; and on June 1, 2008."  On each of those four occasions, State Farm lowered the cost of insurance rates for its policyholders.  State Farm confirms that Mr. Streily conducted a thorough search for documents, including the profitability projections referenced above.  Those responsive documents have been produced to Plaintiffs' counsel.

4. **Unreadable Produced Documents**

Plaintiffs have encountered two copies of one document in State Farm's productions containing pages that are unreadable or appear to be blank. On June 3, 2021, Plaintiffs sent State Farm a letter regarding these documents and requesting that State Farm re-produce these documents in a readable format.

On June 11, 2021, State Farm noted that these documents are scanned paper documents that were nearly thirty years old at the time of scanning.  State Farm explained that they had reviewed the paper versions of these documents at the time of the collection in *Vogt* and believe the produced versions accurately reflect the condition and legibility of the paper copies.  However, State Farm agreed to revisit the paper document originals of these documents to determine if they can be reproduced in "more readable" versions by June 25, 2021.

5. **State Farm's Supplemental Production of Annual Mortality, Expense, and Persistency**

On June 3, 2011, Plaintiffs' counsel also wrote to State Farm regarding (1) several years of mortality studies that appeared to be missing information on Universal Life Policies, (2) mortality studies from 2015 to the present, and (3) the 1978-1981 mortality table that was used to price the 86040 Policies at the time of their implementation. Plaintiffs' counsel asked State Farm

to confirm if there are versions of the mortality studies that included Universal Life Policies for every year, if State Farm will produce the recent mortality studies, and if State Farm could locate and produce the 1987-1981 Mortality Table.

State Farm responded on June 11, 2021, confirming that every mortality study that had been produced included Universal Life Policies and providing specific examples of how to locate this information. State Farm also explained to Plaintiffs' counsel that it did not retain a copy of the 1978-1981 mortality table due to the age of the table but re-produced with its letter the following mortality tables: SF0610, SF1115, SF8284, SFL0105, SFL9397, and SF8891.

State Farm further explained that it had produced all mortality studies that existed at the time collection was made in the *Davis v. State Farm Life Ins. Co.* matter (which occurred subsequent to the *Vogt* litigation), including the 2015-2016 study. State Farm agreed to produce (and did produce) mortality studies for 2016-2017, 2017-2018, and 2018-2019 (the study for 2019-2020 has not yet been completed).

Plaintiffs' Position

Following receipt of the June 11 letter, Plaintiffs revisited the mortality studies. According to Plaintiffs' review, while some of the years Plaintiffs had originally identified did have the Universal Life information as State Farm pointed out, some mortality studies did not single out Universal Life Plans or Experience, but instead combined the analysis and information with that of Variable Life. On June 17, 2021, Plaintiffs followed up with State Farm about whether the Universal Life Experience for these years exists separate from that of Variable Life Experience.

Defendant's Position

Regarding the supplementation of studies, last October, the parties conferred regarding whether supplemental collection (outside of the documents collected and produced in prior

13

litigation) was necessary in this case. Plaintiffs did not respond to State Farm's objection to any supplemental collection outside of documents specific to the named-Plaintiffs. Nonetheless, State Farm agreed to produce—and did produce, on June 11—all mortality studies completed between the collection in *Davis* and the present. Although not requested in the June 3 letter, State Farm also produced all persistency and expense studies completed by State Farm from the time of collection in the prior cases through the present.

State Farm is in receipt of Plaintiffs' June 17 follow-up email and will continue to confer with Plaintiffs as necessary regarding this issue.

### 6.     **Hard Copy Documents**

At the June 10 status conference, Plaintiffs informed the Court of State Farm's recent discovery of paper documents that it intended to produce, as reported to Plaintiff's counsel on May 12. The Court urged State Farm to make a supplemental production as soon as practicable. State Farm made its supplemental production of documents scanned from paper files on June 11.

Plaintiffs' Position

As of today's filing, Plaintiffs are still in the process of reviewing the 387 hard copy documents that State Farm produced on June 11, 2021, and are reserving their right to recall Mr. Phipps in light of the information contained in these late-produced documents, pursuant to the Court's guidance during the June 10, 2021 Status Conference. Plaintiffs also reserve the right to recall Samantha Knackmuhs, whose deposition is scheduled for June 24, 2021, for the same reason.

Defendant's Position

State Farm is not aware of any basis for recalling Mr. Phipps to examine him regarding these hard copy documents. As explained to the Court at the status conference, Mr. Phipps was not

employed by State Farm when these documents, dated 1982-1986, were created. The documents predated his tenure with State Farm, do not relate to his present responsibilities, and were produced to Plaintiffs' counsel five days in advance of his deposition, giving them ample opportunity to examine Mr. Phipps as needed regarding these documents.

As proof that Plaintiffs' counsel had sufficient time to review the documents, they identified three documents that State Farm produced on June 11 among the thirty-nine deposition exhibits they identified at 12:30 AM EDT on the day of the deposition. Thirty-six of these identified documents were produced months ago, but three documents identified as exhibits (the supplemental mortality studies described above in update 5) were produced on June 11.

State Farm is also unaware of any basis to recall Samantha Knackmuhs related to these hard-copy documents. Like Mr. Phipps, Ms. Knackmuhs's tenure does not overlap with the creation of these documents, nor do they relate to her present responsibilities. These documents were produced to Plaintiffs' counsel thirteen days before Ms. Knackmuhs's deposition, and Plaintiffs' counsel may examine Ms. Knackmuhs about her knowledge of these documents at her deposition.

### 7. **Confirmed Deposition Dates**

Following State Farm's disclosure of the hard copy documents and their request for Plaintiff Gettys Bryant Millwood's interpleader documents, Plaintiffs and State Farm have rescheduled the remaining depositions as follows: Plaintiffs have so far deposed Carl Streily on April 30, 2021 and Tony Phipps on June 16, 2021. Plaintiffs have noticed and State Farm has confirmed the upcoming depositions of Samantha Knackmuhs on June 24, 2021, Andy Wieduwilt on July 1, 2021, Jeff Holzbauer on July 16, 2021, and Rusty Hendren on July 21, 2021. State Farm has so far deposed named Plaintiff John Baker McClanahan, Personal Representative for the Estate

of Melissa Buchanan on May 27, 2021, and named Plaintiff Gettys Bryant Millwood on June 18, 2021.

### 8. State Farm's Discovery Requests

Plaintiffs served supplemental discovery responses and made a supplemental production of documents on March 19, 2021. On May 11, State Farm wrote to Plaintiffs' counsel identifying several concerns with Plaintiff Millwood's production. Specifically, State Farm asked that Plaintiffs' counsel: (i) confirm the basis for redactions to certain documents, (ii) confirm that Plaintiff Millwood conducted a diligent search for certain documents related to a claim for Social Security Disability benefits, which could be relevant to disability rider benefits on his Policy, and (iii) produce documents relating to the interpleader action involving the Millwood policy in which Mr. Millwood was a defendant, styled *State Farm Life Insurance Co. v. Bishop*, No. 7:17-CV-00052-DCC (D.S.C.), and the underlying dispute. In response to State Farm's letter, Plaintiffs made two supplemental productions, on May 26, 2021, confirming the basis for redactions and on June 4, 2021, producing documents related to the interpleader action.

Because the parties are continuing to meet and confer regarding these issues, no intervention by the Court is required at this time.

Respectfully submitted,

*/s/ David M. Wilkerson*
David M. Wilkerson
SC Federal ID# 7188
The Van Winkle Law Firm
11 N. Market Street
Asheville, NC 28801
Phone: 828-258-2991
Fax: 828-257-2767
dwilkerson@vwlawfirm.com

| | |
|---|---|
| James J. Pizzirusso<br>Melinda R. Coolidge<br>Nathaniel C. Giddings<br>888 16th Street, N.W.<br>Suite 300<br>Washington, DC 20006<br>Tele: 202-540-7200<br>Fax: 202-540-7201<br>Email: jpizzirusso@hausfeld.com<br>Email: mcoolidge@hausfeld.com<br>Email: ngiddings@hausfeld.com<br><br>Kimberly A. Fetsick<br>HAUSFELD LLP<br>33 Whitehall Street, Floor 14<br>New York, New York 10004<br>Phone: (646) 357-1100<br>kfetsick@hausfeld.com<br><br>Larry D. Lahman* Roger L. Ediger*<br>MITCHELL DeCLERCK<br>202 West Broadway Avenue<br>Enid, Oklahoma 73701<br>Tel.: 580-234-5144<br>Fax: 580-234-8890<br>Email: larry.lahman@sbcglobal.net<br>Email: rle@mdpllc.com | Jeffrey Kaliel<br>Sophia Goren Gold<br>Kaliel PLLC<br>1875 Connecticut Avenue NW,<br>10th Floor Washington, DC 20009<br>202-350-4783<br>jkaliel@kalielpllc.com<br>sgold@kalielpllc.com<br><br>George Brandt, III<br>Fed. Bar No. 01451<br>HENDERSON, BRANDT & VIETH, P.A.<br>360 E. Henry St., Suite 101<br>Spartanburg, SC 29302<br>Phone: 864-583-5144<br>Fax: 864-582-2927<br>gbrandt@hbvlaw.com |
| BOULIER THOMPSON & BARNES, LLC<br>*/s/ Joshua Thompson*<br>Perry D. Boulier<br>Joshua Thompson<br>101 W. Saint John St.,<br>Suite 300<br>Spartanburg, SC 29304<br>T: 864-606-1090<br>pboulier@btblawfirm.com<br>jthompson@btblawfirm.com | STINSON LLP<br>Jeremy A. Root (*pro hac vice*)<br>230 W. McCarthy St.<br>Jefferson City, MO 65101<br>T: 573-556-3609<br>F: 573-556-3635<br>jeremy.root@stinson.com<br><br>Todd A. Noteboom (*pro hac vice*)<br>50 S. Sixth St., Suite 2600<br>Minneapolis, MN 55402<br>T: 612-335-1500<br>F: 612-335-1657<br>todd.noteboom@stinson.com |

17

ALSTON & BIRD LLP
Cari K. Dawson (*pro hac vice*)
Ga. Bar # 213490
Tiffany L. Powers (*pro hac vice*)
Ga. Bar # 586589
1201 W. Peachtree Street
Atlanta, GA 30309
T: 404-881-7000
F: 404-253-8567
cari.dawson@alston.com
tiffany.powers@alston.com
*Attorneys for Defendant State Farm Life Insurance Company*

18