**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

GETTYS BRYANT MILLWOOD, on behalf of
himself and all others similarly situated,

                    Plaintiff,

vs.

STATE FARM LIFE INSURANCE COMPANY,

                    Defendant.

Civil Action No. 7:19-cv-01445-dcc

## PLAINTIFF'S OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# I.   **PRELIMINARY STATEMENT**

Plaintiff, Gettys Bryant Millwood ("Millwood" or "Plaintiff"), by and through his undersigned counsel, respectfully submits this opposition to Defendant State Farm Life Insurance Company's ("State Farm") Motion for Summary Judgment ("Motion"), ECF No. 183. In support of this opposition, Plaintiff submits the Declaration of David M. Wilkerson ("Wilkerson SJ Declaration") and Exhibits 1-19, thereto. Where appropriate, Plaintiff relies on exhibits attached to the Declaration of Jeremy Root ("Root Declaration"), ECF No. 185-1, which was attached as Exhibit A to State Farm's Motion.

# II.   **INTRODUCTION**

State Farm's Form 86040 universal life insurance policy promises that the monthly cost of insurance rates ("COI Rates") will be "based on" the Insured's age, sex, and applicable rate class. Root Decl., Ex. 9 at 10 (hereinafter, the "Policy"). The Policy further promises that "such rates can be adjusted for projected changes in mortality." *Id*.

Plaintiff alleges that State Farm breached this Policy because it did not "base" its COI Rates on the Insured's "age, sex, and applicable rate class." Compl. at ¶¶ 28, 32-38 (ECF No. 1). Plaintiff further alleges that when State Farm chose to adjust the COI Rates on the Policy, it did not make that adjustment based on "projected changes in mortality" but instead included other undisclosed factors in its calculations. Compl. at ¶ 12. The parties agree that State Farm reduced its COI Rates three times during the Class Period, on November 1, 1990, with those COI rates remaining in force until December 31, 2001; on January 1, 2002, with those COI rates remaining in force until May 31, 2008; and on June 1, 2008, with those COI rates remining in force through the present. *Id*. at ¶¶ 94, 105, 117.

Plaintiffs allege that rather than abide by the clear terms of the Policy, State Farm adjusted its COI rates on factors other than "projected changes in mortality." *See* Wilkerson SJ Decl., Ex.

2 (Corrected Stern Decl. at ¶¶ 85-136). State Farm does not dispute this fact. *See* Mot. at 8 (admitting that State Farm considered its reserves and "surplus requirements (*i.e.*, profits) "when adjusting cost of insurance rates for projected changes in mortality"). As a result of State Farm's breach, Plaintiff alleges that ██████████████████████████████ ██████████████████ Wilkerson SJ Decl., Ex. 1 (Rebuttal Stern Declaration at ¶ 113, Table 2).

Importantly, this case is not the first of its kind. The same language at issue in this case is also found in State Farm's Form 94040 universal life insurance policy, which has been the subject of numerous lawsuits. In at least three of those cases, State Farm moved for summary judgment on the same grounds as it does here, and in each of those cases, the courts interpreting the same operative policy language have denied State Farm's motions for summary judgment as to the meaning of those terms, and in some cases, granted the plaintiffs' cross-motion for summary judgment as to their interpretation of the contract's terms.[1] *See Page v. State Farm Life Ins. Co., No.* SA-20-CV-00617-FB, 2022 WL 718789, at *17 (W.D. Tex. Mar. 10, 2022); *Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2018 WL 1747336, at *9 (W.D. Mo. Apr. 10, 2018), aff'd, 963 F.3d 753, 765 (8th Cir. 2020); *Bally v. State Farm Life Ins. Co.,* No. 18-CV-04954-CRB, 2019 WL 3891149, at *1, *8 (N.D. Cal. Aug. 19, 2019). State Farm has offered no reason to depart from those other court's holdings and should similarly conclude that the contract language at issue in this case does not unambiguously support State Farm's preferred reading. This Court should do the same.

Furthermore, in South Carolina, insurance contracts are to be construed against the insurer, *State Farm Fire & Casualty Co. v. Barrett,* 340 S.C. 1, 8, 530 S.E.2d 132, 135 (Ct. App. 2000), and any ambiguity must be drawn in the insured's favor. *See Diamond State Ins. Co. v. Homestead*

---

[1]     Plaintiffs intend to file their own affirmative motion for summary judgment.

*Indus., Inc.,* 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995). This Court, exercising its diversity jurisdiction, must apply this standard to the interpretation of the Policy language at issue. *See Levine v. Emps. Ins. Co. of Wausau*, 887 F.3d 623, 627 (4th Cir. 2018). This alone warrants rejection of State Farm's Motion as to Plaintiff's breach of contract claims.

State Farm is also not entitled to summary judgment on Plaintiff's other claims. Plaintiff's conversion claim is valid because Plaintiff delivered money to State Farm for a specific purpose and State Farm used it contrary to its authority. Plaintiff's other claims survive because Plaintiff's contract claims are meritorious.

Finally, State Farm has also failed to establish its statute of limitations defense as a matter of law. Every court that has considered the issue has concluded that no policy owner could have known State Farm was basing and adjusting its COI Rates on unlisted factors unrelated to projected changes, and therefore State Farm cannot refute that the discovery rule applies to prevent the accrual of Plaintiff's claims. *See Page v. State Farm Life Ins. Co., No.* SA-20-CV-00617-FB, 2022 WL 718789, at *17 (W.D. Tex. Mar. 10, 2022); *Vogt v. State Farm Life Ins. Co*., No. 2:16-CV-04170-NKL, 2018 WL 1747336, at *6-*8 (W.D. Mo. Apr. 10, 2018); *Jaunich v. State Farm Life Ins. Co.*, No. CV 20-1567 (PAM/JFD), 2021 WL 5054461, at *2 (D. Minn. Nov. 1, 2021). State Farm's fraudulent concealment also tolls the statute of limitations. State Farm's Motion therefore must be denied in its entirety.

For the foregoing reasons, Plaintiff respectfully requests that the Court DENY State Farm's Motion and permit Plaintiff to proceed to trial on each of his claims.

III.     **FACTUAL BACKGROUND**

A.     **The Life Insurance Contracts Between State Farm and the Class**

Plaintiff is a resident of Spartanburg, South Carolina. Compl. at ¶ 13. Plaintiff entered into a Policy with State Farm with an initial face value of $101,869 that became effective on May 10, 1988. *Id*.

The Policy is issued on State Farm's "FORM-86040." *Id*. at ¶ 1. The Policy is a valid and enforceable contract between each policy owner and State Farm. *Id.* at ¶¶ 19-22; *see also Canal Ins. Co. v. Nat'l House Movers, LLC,* 414 S.C. 255, 260–61, 777 S.E.2d 418, 421 (Ct. App. 2015) (citing *Auto Owners Ins. Co. v. Rollison,* 378 S.C. 600, 606, 663 S.E.2d 484, 487 (2008)). Its terms are not subject to individual negotiation and are materially the same for all policy owners. Compl. at ¶ 20. The Policy cannot be altered by the agent's representations at the time of sale, or by any other discussions or writings. Wilkerson SJ Decl., Ex. 4 (Policy at 11); *see also* Compl. at ¶ 20. Moreover, State Farm's obligations (like the policy owner's) cannot be obviated by informal consent, waiver, or some other act because "[o]nly an officer has the right to change this [P]olicy. No agent has the authority to change the [P]olicy or to waive any of its terms." *Id.*

B.     **The Policy Identifies Specific Charges State Farm is Authorized to Deduct from Cash Values**

The Policy authorizes State Farm to take from the Policy's Cash Value a Monthly Deduction comprised of the separately identified: (a) COI charge; (b) charges for any riders; and (c) monthly expense charge. *See* Wilkerson SJ Decl., Ex. 4 (Policy at 9).

1.     ***State Farm is permitted to deduct a "cost of insurance" charge each month, and any changes to this charge must be "based on" State Farm's "projected changes in mortality."***

The Policy provides that the COI charge is determined and calculated as follows:

> **Cost of Insurance.** This cost is calculated each month. The cost is determined separately for the Initial Basic Amount and each

increase in Basic Amount. The cost of insurance is the monthly cost of insurance rate times the difference between (1) and (2), where:

(1) is the amount of insurance on the deduction date at the start of the month divided by 1.0032737, and

(2) is the account value on the deduction date at the start of the month before the cost of insurance and the monthly charge for any waiver of monthly deduction benefit rider are deducted.

Until the account value exceeds the Initial Basic Amount, the account value is part of the Initial Basic Amount. Once the account value exceeds that amount, if there have been any increases in Basic Amount, the excess will be part of the increases in order in which the increases occurred.

Wilkerson SJ Decl., Ex. 4 (Policy at 10).

The Policy then states that COI rates "for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class," and that "[s]uch rates can be adjusted for projected changes in mortality." *Id*.

The factors identified in the Policy are characteristics commonly used within the life insurance industry to determine the mortality expectations of an insured or group or class of insureds. Wilkerson SJ Decl., Ex. 2 (Corrected Sterm Decl. at ¶¶ 58-63); *see Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2018 WL 1747336, at *2 (W.D. Mo. Apr. 10, 2018) (denying State Farm's summary judgment motion in a case involving the Form 94040 universal life policy and stating: "Age, sex and rating class are factors used to differentiate policyholders in developing mortality tables."); *Alleman v. State Farm Life Ins. Co.*, 334 F. App'x 470, 472 (3d Cir. 2009) (noting that age and sex are mortality factors); *In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*, 920 F. Supp. 2d 1050, 1061 (N.D. Cal. 2013), *vacated pursuant to settlement*, 2013 WL 10349975 (N.D. Cal. Nov. 8, 2013) ("Because age and sex are the guiding factors in the lifespan of a person, a layperson would ordinarily attach the rates to mortality."). The

applicable rate class for the Policy are Regular (Smoker) and Non-Smoker. *See* Wilkerson SJ Decl., Ex. 2 (Corrected Stern Decl. at Fn. 4). These two rate classes are, like age and sex, used to determine the mortality expectations of a group or class of insureds. *See* Wilkerson SJ Decl., Ex. 2 (Corrected Stern Decl. at ¶ 39).

State Farm does not disclose to its insured, including Plaintiff, the actual factors included in determining their COI Rates. Compl. at ¶ 53; *see also Bally*, 335 F.R.D. 288, 304 (N.D. Cal. 2020) (granting certification of a California class, stating "State Farm does not adduce any evidence to show that 'policyholder[s] would have been on notice that State Farm was considering unlisted variables in calculation [of] the COI'"); Wilkerson SJ Decl., Ex. 4 (Policy).

### 2. *State Farm is permitted to deduct an "expense charge" of $4.00 per month per Policy*

The Policy authorizes State Farm to deduct a monthly Expense Charge, which is fixed at $4.00 per month. Wilkerson SJ Decl., Ex.4 (Policy at 3). This is the amount that State Farm is permitted to recover for any expenses associated with writing and administering the Policy; that is, and Plaintiff alleges that, State Farm is only permitted to deduct $4.00 per month in policy expenses, even if State Farm's actual expenses for the Policy exceed this amount. Wilkerson SJ Decl., Ex. 4 (Policy at 3); *see also* Compl. at ¶¶ 25-28.

### C. <u>State Farm Adjusted its Cost of Insurance Charges Based on Factors Other Than Its "Projected Changes in Mortality."</u>

Plaintiff contends the Policy provision requiring that monthly COI Rates "for each policy year" be "based on the Insured's age on the Policy anniversary, sex, and applicable rate class" and can be adjusted only for "projected changes in mortality" means exactly what it says: that once State Farm decided to change its COI Rates, it could only change those rates based on its "projected changes in mortality." But rather than abide by the clear terms of the Policy, State Farm adjusted

its COI Rates on factors other than "projected changes in mortality." *See* Wilkerson SJ Decl., Ex. 2 (Corrected Stern Decl. at ¶¶ 85-136).

State Farm reduced its COI Rates three times during the Class Period, on November 1, 1990, with those COI Rates remaining in force until December 31, 2001; on January 1, 2002, with those COI Rates remaining in force until May 31, 2008; and on June 1, 2008, with those COI Rates remining in force through the present. *Id.* at ¶¶ 94, 105, 117. In breach of the clear language of the Policy, State Farm considered factors other than its "projected changes in mortality" when adjusting its COI Rates in 1990, 2001, and 2008.

While State Farm does ***not*** dispute this fact. *See* Mot. at 8 (admitting that State Farm considered its reserves and "surplus requirements (*i.e.*, profits) "when adjusting cost of insurance rates for projected changes in mortality"), Plaintiff briefly sets forth some of the evidence showing that State Farm considered non-mortality factors when adjusting its COI Rates for the Policy in 1990, 2001, and 2008.

### 1. State Farm's 1990 COI Rate adjustment was based on factors other than State Farm's "projected changes in mortality."

State Farm's November 1, 1990 COI Rate adjustment was not based on State Farm's projected changes in mortality. Wilkerson SJ Decl., Ex. 2 (Corrected Stern Decl. at ¶¶ 94-96).



Wilkerson SJ Decl., Ex. 2 (Corrected Stern Decl. at ¶ 95); Wilkerson SJ Decl., Ex. 5 (SFLICMW00054067 at 0777).

However, rather than rely on these projected changes in mortality, ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████ Wilkerson SJ Decl., Ex. 2 (Corrected Stern Decl. at ¶¶ 96-100).

**2.    State Farm's 2002 COI Rate adjustment was based on factors other than State Farm's "projected changes in mortality."**

State Farm's January 1, 2002 adjustment to its COI Rates was not based on its projected

changes in mortality. Rather, State Farm based its COI Rate reductions on the COI Rates ████████

████████████████████████████████████████████████████████████████

---

[2]    *See, e.g.,* Wilkerson SJ Decl., Ex. 6 (SFLICMW00212195 at 323) ████████████
████████████████████); Wilkerson SJ Decl., Ex. 14 (Hendren Dep. at 216:24-217:4; 218:24-220:3) (discussing Wilkerson SJ Decl., Ex. 7 (SFLICMW00001299 at 1301): "████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

[3]    *See* Wilkerson SJ Decl., Ex. 8 (SFLICMW00001362 at 363) (████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

[4]    Wilkerson SJ Decl., Ex. 6 (SFLICMW00212195 at 323).

[5]    ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████ Wieduwilt Dep.
at 114:21-115:9)).

[7]    Wilkerson SJ Decl., Ex. 10 (SFLICMW00212490 at 491)████████████████████
████████████████████████████████ Wilkerson SJ Decl., Ex. 15 (Wieduwilt Dep.
at 114:21-115:9)).

████████████████████████████████████████████████ In addition, State Farm once

again failed to reduce the COI Rates ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████ Wilkerson SJ Decl., Ex. 2 (Corrected Stern Decl. at ¶¶ 109-113).

### 3. State Farm's 2008 COI Rate adjustment was based on factors other than State Farm's "projected changes in mortality."

State Farm's June 1, 2008 COI Rate adjustment was also not based on its projected changes

in mortality. Instead, and rather than matching the projected improvement in mortality with

reductions █████ which documents and testimony show State Farm considered doing—State

Farm reduced its COI Rates ████████████████ Testimony also shows State Farm

considered ████████████████████████████████████████████████████████

████████████████████████████████████

---

[8] ████ Wilkerson SJ Decl., Ex. 6 (SFLICMW00212195 at 456) ("█████████████████████████
████████ Wilkerson SJ Decl., Ex. 6 (SFLICMW00212195 at 323); *see also* Wilkerson SJ Decl., Ex. 15
(Wieduwilt Dep. at 227:25-228:5) (████████████████████████████████████████████
████████████.

[9] Wilkerson SJ Decl., Ex. 11 (SFLICMW00007678) "10-1-1987 Pricing" Tab; Wilkerson SJ Decl.,
Ex. 12 (SFLICMW00259632) at "Reduced COI's" Tab.

[10] *See* Wilkerson SJ Decl., Ex. 17 (Streily Dep. at 177:11-13; 178:17-179:14). (referencing Wilkerson
SJ Decl., Ex. 6 (SFLICMW00212195 at 297); "████████████████████████████████████
████████████████████████████████████████████
Wilkerson SJ Decl., Ex. 15 (Wieduwilt Dep. at 234:9-14; 236:10-237:3) (referencing Wilkerson SJ Decl.,
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████

[11] Wilkerson SJ Decl., Ex. 13 (SFLICMW00044046) ("██████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████



**4.      State Farm has not adjusted its COI Rates since 2008, notwithstanding State Farm's "projected changes in mortality" continuing to improve**

Finally, State Farm has not adjusted its COI Rates *since* June 1, 2008, despite State Farm experiencing ███████████████████████████████ Despite the failure to adjust the COI Rates since June 1, 2008, Plaintiff has not included this as part of the Plaintiff's damage calculation. [12] Wilkerson SJ Decl., Ex. 2 (Corrected Stern Decl. at ¶ 129).

### D.      State Farm's Breach Has Injured Plaintiff and Members of the South Carolina Class

Because these Policy overcharges result from State Farm's uniform administration of the Policy, all policy owners are subject to the same COI Rates and the resulting overcharges.

State Farm's inclusion of these other, undisclosed, non-mortality factors in its COI Rate adjustments in 1990, 2002, and 2008, as well as State Farm's failure to adjust its COI Rates based on its projected improving mortality since 2008, has had a substantial impact on the amounts deducted each month from policy owners' Cash Values. Wilkerson SJ Decl., Ex. 2 (Corrected Stern Decl. at ¶¶ 147-152).

Plaintiff's expert estimates that damages for the classes ████████████████ Wilkerson SJ Decl., Ex. 1 (Rebuttal Stern Decl. at ¶ 113, Table 2). And, on a materially similar policy form and

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

[12] Wilkerson SJ Decl., Ex. 18 (SFLICMW00400381); Wilkerson SJ Decl., Ex. 19 (SFLICMW00338249 at Slides 11 and 13).

a nearly identical pricing process, a jury found State Farm's overcharges caused over $34 million in lost Cash Value for a class of approximately 24,000 Missouri policy owners, *see Vogt v. State Farm Life Ins. Co.,* 963 F.3d 753, 761 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 2551 (2021).

## IV.     <u>LEGAL STANDARDS</u>

Two legal standards are relevant to State Farm's Motion: (1) Rule 56 and (2) the standard applied by South Carolina courts to insurance contracts. Each is discussed below.

### A.     <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movement is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Federal courts in this District have consistently held a genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the non-moving party. *Newport News Holdings Corp. v. Virtual City Vision,* 650 F.3d 423, 434 (4th Cir. 2011). In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–24 (4th Cir.1990). "All that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968). As shown below, State Farm cannot meet the Rule 56 standard, and State Farm's Motion must therefore be denied.

### B.     <u>Standard for Interpretation of Insurance Contracts</u>

In South Carolina, insurance contracts are to be construed against the insurer, *State Farm Fire & Cas. Co. v. Barrett,* 340 S.C. 1, 8, 530 S.E.2d 132, 135 (Ct. App. 2000), and any ambiguity must be drawn in the insured's favor. *Diamond State Ins. Co. v. Homestead Indus., Inc.,* 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995). This Court, exercising its diversity jurisdiction, must apply

this standard to the interpretation of the Policy language at issue. *Levine v. Emps. Ins. Co. of Wausau*, 887 F.3d 623, 627 (4th Cir. 2018).

The courts overseeing the other cases against State Farm have applied similar standards (under those state's laws) in declining to grant summary judgment for State Farm on the breach of contract claim—and in some cases, in favor of those plaintiffs. *See Page v. State Farm Life Ins. Co., No.* SA-20-CV-00617-FB, 2022 WL 718789, at *17 (W.D. Tex. Mar. 10, 2022); *Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2018 WL 1747336, at *9 (W.D. Mo. Apr. 10, 2018), aff'd, 963 F.3d 753, 765 (8th Cir. 2020); *Bally v. State Farm Life Ins. Co.,* No. 18-CV-04954-CRB, 2019 WL 3891149, at *1, *8 (N.D. Cal. Aug. 19, 2019); *Jaunich v. State Farm Life Ins. Co.*, No. CV 20-1567 (PAM/JFD), 2021 WL 5054461, at *2 (D. Minn. Nov. 1, 2021).

For the reasons set forth below, State Farm does not and cannot overcome this standard of interpretation, and summary judgment can therefore not be granted in State Farm's favor.

## V. ARGUMENT

### A. State Farm is not entitled to Summary Judgment on Plaintiff's Claim of Breach of Contract the Plain Language of the Cost of Insurance Provision Does Not Support State Farm's Interpretation

An insurance policy is a contract between the insured and the insurance company, and the policy's terms are to be construed according to the law of contracts. *Canal Ins. Co. v. Nat'l House Movers, LLC*, 414 S.C. 255, 260–61, 777 S.E.2d 418, 421 (Ct. App. 2015) (citing *Auto Owners Ins. Co. v. Rollison,* 378 S.C. 600, 606, 663 S.E.2d 484, 487 (2008)). "Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary[,] and popular meaning." *Sloan Constr. Co. v. Cent. Nat'l Ins. Co. of Omaha,* 269 S.C. 183, 185, 236 S.E.2d 818, 819 (1977). "Where the contract's language is clear and unambiguous, the language alone determines the contract's force and effect." *McGill v. Moore,* 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009)

"It is a question of law for the court whether the language of a contract is ambiguous." *S.C. Dep't of Nat. Res. v. Town of McClellanville,* 345 S.C. 617, 623, 550 S.E.2d 299, 302–03 (2001) (citation omitted); *see also Canal Ins Co.*, *supra*, at 421 (citing *Hawkins v. Greenwood Dev. Corp.,* 328 S.C. 585, 592, 493 S.E.2d 875, 878 (Ct.App.1997)) ("The construction of a clear and unambiguous contract is a question of law for the court to determine."). "A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Hawkins,* 328 S.C. at 592, 493 S.E.2d at 878 (quoting 17A AM. JUR. 2D *Contracts* § 338 (1991)). "A contract is read as a whole document so that one may not create an ambiguity by pointing out a single sentence or clause." *McGill,* 381 S.C. at 185, 672 S.E.2d at 574 (citation omitted). "Whether a contract is ambiguous is to be determined from examining the entire contract, not by reviewing isolated portions of the contract." *Canal Ins. Co.* at 421(citing *Farr v. Duke Power Co.,* 265 S.C. 356, 362, 218 S.E.2d 431, 433 (1975) (citation omitted)).

"Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer." *Diamond State Ins. Co. v. Homestead Indus., Inc.,* 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995). "Where the words of an insurance policy are capable of two reasonable interpretations, the interpretation most favorable to the insured will be adopted." *State Farm Fire & Cas. Co. v. Barrett,* 340 S.C. 1, 8, 530 S.E.2d 132, 135 (Ct. App. 2000). Finally, "[w]hen a policy does not specifically define a term, the term should be defined according to the usual understanding of the term's significance to the ordinary person." *Id.* at 8, 530 S.E.2d at 136.

### 1. The Policy only allows State Farm to base its COI Rates on the Insured's age, sex, and applicable rate class.

Plaintiff contends State Farm breached its contract when it determined COI Rates based on impermissible factors. Two provisions in State Farm's Policy prohibit State Farm's conduct. First, the Policy states that COI rates "for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class." Wilkerson SJ Decl., Ex. 4 (Policy at 10). The meaning of this provision is clear: in any given year, COI rates may not be based on anything other than the Insured's age on the policy anniversary, sex, and applicable rate class. In basing COI Rates on other, unlisted factors, State Farm breached its Policy.

Numerous courts agree. In *Vogt*, State Farm moved for summary judgment against the insured, arguing that the exact same "based on" provision should not be read as meaning that those factors are exclusive. *Vogt*, 2018 WL 1747336, at *3. From this, State Farm concluded it was not prohibited from including undisclosed profit and expense factors in the COI Rates. *Id.* at *3. The *Vogt* court construed the COI Rates provision and held that "no reasonable lay person would expect that State Farm was permitted to use any factor it wanted to calculate the cost of insurance." *Id.* at *4. The court also rejected State Farm's claim that the listed factors should be read as the characteristics State Farm uses to assign COI Rates:

> State Farm insists that "the only plausible reading of the sentence at issue is that age, sex and rate class are the only individual–specific factors used to place Policyholders into different risk groups, not that age, sex and rate class are the only factors that State Farm may use to determine COI rates." But the sentence does not even mention risk groups. To the contrary, it mentions only "[t]hese rates for each Policy year," referring to the "Monthly Cost of Insurance Rates" subheading, and the specified factors that form the "bas[is]" thereof.

*Id*. at *5 n.1 (citation omitted). The court granted summary judgment in the class's favor on policy interpretation and breach. *Id.* at *9. A jury later found class-wide damages of more than $34 million. *See Vogt v. State Farm Life Ins. Co.,* 963 F.3d 753, 761 (8th Cir. 2020).

State Farm appealed to the Eighth Circuit, where it argued that the district court erred in concluding "that the policy language did not allow State Farm to formulate the COI based on factors in addition to those expressly listed in the policy." *Vogt*, 963 F.3d 753, 763. State Farm also argued that the "'based on' sentence is directed at the factors that are individual to the insured," and therefore that the court should hold that the identified factors "demonstrate how a COI rate is likely to vary from one individual policyholder to the next." *See* State Farm Opening Br., 2019 WL 413071, at 18-19 (quoting *Norem v. Lincoln Ben. Life Co.*, 737 F.3d 1145, 1150 (7th Cir. 2013))(citing *Thao v. Midland Nat'l Life Ins. Co.*, 2013 WL 119871, at *2 (E.D. Wis. Jan. 9, 2013), *aff'd*, 549 F. App'x 534 (7th Cir. 2013)). The Eighth Circuit rejected State Farm's arguments, concluding "a person of ordinary intelligence purchasing an insurance policy would not read the provision and understand that where the policy states that the COI fees will be calculated 'based on' listed mortality factors that the insurer would also be free to incorporate other, unlisted factors into this calculation." *Vogt*, 963 F.3d at 763-64. The Eighth Circuit further rejected State Farm's reliance on *Norem* and *Thao*, concluding the fact that "several courts have examined the issue in very similar circumstances and have reached differing conclusions supports the conclusion that the phrase is ambiguous." *Id.* at 764.

State Farm has also moved for summary judgment in other cases based upon the same Form 94030 Policy (which again contains the same policy language at issue here). First, State Farm moved for summary judgment on the interpretation of the same Form 94030 Policy in California. *Bally v. State Farm Life Ins. Co.,* No. 18-CV-04954-CRB, 2019 WL 3891149, at *1 (N.D. Cal. Aug. 19, 2019). State Farm again argued that the Policy permits "non-disclosed factors to be considered so long as the enumerated factors are the primary basis for the COI calculation" and also that the listed factors should be read as the characteristics State Farm would use to

"'differentiate one insured from another and insure that similarly situated insureds will be treated alike in the amounts they are charged for the cost of insurance.'" *Bally*, SJ Br., 2019 WL 4697435 (N.D. Cal.) (quoting *Norem*, 737 F.3d at 1149). The court there, like Judge Laughrey and later the Eighth Circuit, concluded a layperson could reasonably read the COI Rates provision as limiting State Farm to charging COI Rates determined from only the listed mortality factors, finding the plaintiff's interpretation was consistent with the plain language of the Policy, common usage of its terms, and other courts' interpretations of similar COI rates provisions. *See Bally v. State Farm Life Ins. Co.*, No. 18-CV-04954-CRB, 2019 WL 3891149, at *5-6 (N.D. Cal. Aug. 19, 2019).

The court in *Jaunich v. State Farm Life Ins. Co.*, No. CV 20-1567 (PAM/JFD), 2021 WL 5054461, at *2 (D. Minn. Nov. 1, 2021), also held that the phrase was at least ambiguous. The court agreed with the Eighth Circuit that the fact that "several courts have examined the issue in very similar circumstances and have reached differing conclusions" supports a finding that the COI provision is ambiguous. *Id.*

Similarly, in *Page v. State Farm Life Ins. Co., No.* SA-20-CV-00617-FB, 2022 WL 718789, at *17 (W.D. Tex. Mar. 10, 2022), the Magistrate Judge recently issued a Report and Recommendation denying State Farm's motion for summary judgment on the same theories State Farm advances here. The court in *Page* noted, as did the court in *Vogt*, that the term "based on" is not defined in the Policy. *Id.* at *6. State Farm also argued that "applicable rate class" unambiguously allows State Farm to consider other factors outside of those specified in setting its COI rates. *Id.* at *7.

This argument was erroneously adopted by the Court in *Bally v. State Farm Life Ins. Co.*, 536 F. Supp. 3d 495 (N.D. Cal. Apr. 28, 2021), which had previously denied summary judgment to State Farm before later reversing itself. In its first summary judgment ruling, the court in *Bally*

disagreed with State Farm's argument that the words "based on," in the context of the Monthly COI Rates provision, connoted non-exclusivity. *Bally v. State Farm Life Ins. Co.*, 536 F. Supp. 3d 495, 504 (N.D. Cal. 2021) and denied summary judgment. In its second summary judgment ruling, however, the court erroneously held that the consideration of "applicable rate class" makes no promises about how the "applicable rate class" will be developed, and certainly never promises that those rates will only be developed using mortality factors. *Bally v. State Farm Life Ins. Co.*, 536 F. Supp. 3d 495, 508 (N.D. Cal. 2021). Yet here, the only two applicable rates classes are "Smoker and Non-Smoker." Wilkerson SJ Decl., Ex. 16 (Knackmuhs Depo. 57:9-15). These two rate classes are unquestionably mortality factors, as State Farm is only interested in collecting smoking information to calculate projected mortality. *See* Wilkerson SJ Decl., Ex. 16 (Knachmuhs Depo. 147:13-148:9). ( "Q: ███████████████████████

███████████████████

The two courts that have so far considered this decision in *Bally* have both rejected its holding. The court in *Page* did not agree with State Farm's arguments or the *Bally* court's reasoning in its April 28, 2021 order:

> To embrace State Farm's argument, the Court would have to conclude that the Policy communicates to an ordinary lay policyholder that there are two distinct processes at issue in the COI charge provision—the pre-market development of COI rates and the post-market assignment of those rates to a given insured. The Policy does not clearly separate these two processes. Nor does it clearly express that COI ratemaking occurs only prior to market approval. And most importantly, there is nothing textually in the COI rate provision that suggests the provision is limited to a description of the assignment of rates, as opposed to rate calculation itself.

*Page,* 2022 WL 718789, at *7. As the court in *Page* concluded, "[n]othing in the contractual language itself supports State Farm's interpretation that it has discretion to consider such factors as its profits and expenses at all stages and in all aspects of its ratemaking." *Id.* Similarly, the court

in *Januich* said that "any such distinction is immaterial, because the substance of Jaunich's claim does not hang solely on either phrase, but on whether State Farm improperly used undisclosed factors in calculating the COI under the policy." *Jaunich*, 2021 WL 5054461, at *2 .

In any event, a difference of judicial opinion regarding the interpretation of the same contractual language is evidence that the contract is ambiguous and precludes summary judgment. *See State Auto Prop. and Cas. Ins. Co. v. Travelers Indemnity Co. of Am.,* 343 F.3d 249, 254-257 (4th Cir. 2003).

State Farm attempts to differentiate the present case from these previous cases by claiming that the other cases are about "initial COI rates," rather than about adjustments to COI Rates, and contends that Plaintiff's expert did not address State Farm's initial COI rates. But State Farm mischaracterizes the record in the 94030 cases, as well as Mr. Stern's report. Fundamentally, both the 94030 cases and this case concern the meaning of identical policy language and essentially identical conduct. While the plaintiffs in the 94030 cases may have had a slightly different damages analysis, liability was premised on the same misconduct—and the same policy provisions—as it is here. And while it is true the plaintiff's expert in those cases criticized State Farm's initial COI rates (something Stern could not do here due to State Farm's own poor recordkeeping in violation of actuarial standards—Wilkerson SJ Decl., Ex. 1 (Rebuttal Stern Decl. ¶¶ 41-42, 56), the plaintiffs in each of those cases *also* criticized State Farm's subsequent adjustment to COI Rates, just as Mr. Stern does. *See* Wilkerson SJ Decl., Ex. 2 (Corrected Stern Decl. at ¶¶ 40-48). Thus, as much as State Farm strains to distinguish these prior holdings, its efforts fall short.

Numerous other courts over nearly 30 years have likewise construed similar COI Rate provisions in universal life insurance policies as prohibiting the insurance company from basing COI Rates on undisclosed factors. *See Rosenbaum v. Philadelphia Life Ins. Co.*, 1994 WL

17118392, at *1, *3 (C.D. Cal. Mar. 1, 1994); *Jeanes v. Allied Life Ins. Co.*, 168 F. Supp. 2d 958, 973 (S.D. Iowa 2001), *aff'd in part, rev'd in part on other grounds*, 300 F.3d 938 (8th Cir. 2002); *Dean v. United of Omaha Life Ins. Co.*, 2007 WL 7079558, at *2 (C.D. Cal. Aug. 27, 2007); *Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 483 (C.D. Cal. 2012); *Fleisher v. Phoenix Life Ins. Co.*, 18 F. Supp. 3d 456, 470 (S.D.N.Y. 2014).[13]

State's Farm reliance on *Norem v. Lincoln Benefit Life Co.*, 737 F.3d 1145, 1152 (7th Cir. 2013) is not persuasive. Here, as noted by the Court in *Vogt*, 2018 WL 1747336 at *5, the Policy contains language that the *Norem* court found to be missing in the policy it considered. In *Norem*, the court noted that the COI provision in the policy before it "says nothing about 'mortality experience' as the basis for the COI rate." *Norem*, at 1154. In contrast, the Policy here states that the rates charged "can be adjusted for projected changes in mortality." Further, as also noted in *Vogt*, *Norem* represents a distinctly minority position. *Vogt*, 2018 WL 1747336, at *4. After *Norem*, the Southern District of New York disagreed, holding that it is "likely that a reasonable insured would read the list of enumerated factors and interpret it as merely informational; he would believe that these are the only six factors that Phoenix will take into account in adjusting COI rates." *Fleisher v. Phoenix Life Ins. Co.*, 18 F. Supp. 3d 456, 472 (S.D.N.Y. 2014).

State Farm asks this Court to completely ignore the foregoing provision and the aforementioned case law because, according to State Farm, the provision requiring COI Rates to be based on "the Insured's age on the policy anniversary, sex, and applicable rate class" exclusively concerns the setting of initial COI Rates, as opposed to any subsequent adjustment of

---

[13]     State Farm's reliance on *Coffman v. Pruco Life Insurance Co.*, 2011 WL 4550152 (D.N.J. Sept. 29, 2011) is misplaced. First, *Coffman* is not binding precedent in South Carolina. Second, its holding has been explicitly rejected by at least one court. *See Feller v. Transamerica Life Ins. Co.*, No. 216CV01378CASAJWX, 2016 WL 6602561, at *10 (C.D. Cal. Nov. 8, 2016) (rejecting the holding in Coffman). Further, as stated, numerous courts have now held that similar COI rates provisions prohibit State Farm from basing its COI Rates upon undisclosed factors.

them. But the plain language of the provision belies State Farm's overly simplistic conclusion. The provision clearly states that COI Rates "*for each policy year* are based on the Insured's age on the policy anniversary, sex, and applicable rate class." Wilkerson SJ Decl., Ex. 4 (Policy at 10). Thus, in any year in which State Farm assesses COI Rates which are not "based on the Insured's age on the policy anniversary, sex, and applicable rate class," State Farm has breached. This is true regardless of whether Plaintiff's expert analyzed the setting of initial rates (the impossibility of which is discussed below) or the application of subsequent rates. The provision requires State Farm to base its rates on the Insured's age on the policy anniversary, sex, and applicable rate class both at the Policy's inception, and throughout the Policy's life. In "basing" its COI Rates on factors other than "the Insured's age on the policy anniversary, sex, and applicable rate class," State Farm has breached.

### 2. The Policy only allows COI Rate adjustments based on State Farm's "projected changes in mortality."

State Farm has also breached the Policy insofar as it promised that COI Rates could only be adjusted for mortality, but State Farm in fact made adjustments to its COI Rates based on factors besides mortality. State Farm does not dispute this fact.

Specifically, the Policy states that COI Rates "can be adjusted for projected changes in mortality." Wilkerson SJ Decl., Ex. 4 (Policy at 10). Plaintiff does not need to take a position on whether State Farm was required to adjust the COI Rates on various occasions, rendering moot State Farm's trumpeted claim that "can" does not mean "must." Instead, Plaintiff's position is simple: once State Farm decided to adjust the COI Rates, for whatever rationale or reason, then State Farm was required to adjust those COI Rates based only upon its projected changes in mortality. This reading is consistent with the Policy language, which states that such rates "can be adjusted for projected changes in mortality" and includes no other permissible factors. Under the

well-established doctrine of *expressio unius est exclusio alterius*, State Farm was not allowed to adjust its COI Rates based upon any non-mortality factors, including whether State Farm believed it was making too much or too little profit, to pay agent bonuses, or to pay ███████████████ ████████████████████████████████████████ Wilkerson SJ Decl., Ex. 16. Yet State Farm concedes that this is exactly what it did. *See* Mot. at 8 (admitting that State Farm considered ███████████████████████████████████████████████████ ████████████████████████████████).

The Policy language here is clear: any adjustment to the COI Rates must be made only on projected changes in mortality. Indeed, Plaintiff's interpretation is the only one that accords with both grammar and logic. If a lease promises "rent will remain the same but can be adjusted annually for inflation," a landlord could not double the rent to compensate for the cost of a new roof. If a high-yield savings account promises to that it may adjust its annual percentage yield "based on interest rates," the APY cannot be affected by how much money a consumer chooses to put into, or take out of, their savings account. Similarly, when State Farm promises that its COI Rate adjustments would be based on mortality and mortality alone, it was obliged to honor that promise.

State Farm's interpretation also leads to unreasonable and illogical results. Under State Farm's interpretation, if State Farm decided to increase COI Rates on the Policy, it could do so in any amount it so chose, so long as the amount chosen did not exceed the maximum rates. Hypothetically, if State Farm's mortality projections for Policy's insured increased by 1%, State Farm could then increase the COI rate by 100% (or more), subject only to the maximum rate in the Policy. No reasonable consumer would understand the Policy to provide State Farm with unfettered discretion to increase its COI Rates.

Plaintiff's interpretation is fair and reasonable to both State Farm and the consumer. If circumstances occurred where State Farm reasonably projected future mortality rates to increase, then State Farm could raise the COI Rates by the amount of the projected change. Conversely, if circumstances occurred where State Farm reasonably projected mortality rates to decrease, COI Rates would also decrease a commensurate amount.

Because the Policy is, at a minimum, ambiguous, State Farm's Motion must be denied.

### 3. *State Farm's maximum COI Rates are not the only limit on what it may charge.*

State Farm contends that the Policy's maximum COI Rates are the only limit on the Policy's monthly COI Rates it can charge. Not so.

This position is inconsistent with the plain text of the Policy. As the *Vogt* court concluded in rejecting this argument, the maximum cost of insurance rates "are defined in the Policy as being 'based on' a more limited range of factors"—age and sex—"than the monthly COI rates"—policy year, age, sex, and rate class. *Vogt*, 2018 WL 1747336, at *6 (comparing the Policy's maximum cost of insurance rates provision at page 11 of the Form 94030 Policy with the Form 94030 Policy's COI Rates provision on page 10). The *Vogt* court concluded that "[b]y referencing both the 'policy year' and the 'policy anniversary' in describing the monthly COI rates, the Policy incorporates the duration of the policy as a factor affecting those rates." *Id.* "In contrast, the Policy does not incorporate a duration factor in describing the maximum COI rates, and the [maximum rates] do not consider policy year." *Id.*; *see also Bally*, 335 F.R.D. 288, 299 (N.D. Cal. 2020) ("'[P]olicy year' in the provision describing factors that go into the monthly COI charges, suggest[s] that Policy year was incorporated into the pricing scheme").

Furthermore, accepting State Farm's argument that the maximum rates are the only limit on what State Farm could charge would "render completely superfluous the COI Rate calculation

provision. If the only limit on the COI that State Farm charged were the COI maximum rates, then there would be no reason why the Policy would have included a list of COI factors." *Bally*, 2019 WL 3891149, at *7 (citing *Dean v. United Omaha Life Ins.*, 2007 WL 7079558, at *5 (C.D. Cal. Aug. 27, 2007)) (rejecting similar argument because that interpretation would "render the provision linking the COI charge to the specified factors superfluous—why would the Policy specify certain factors used to compute the charge if it could be set at [the insurance company's] whim?"); *see also Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017) ("Courts must . . . give effect to all provisions so that none will be meaningless.") (quotations omitted). State Farm's contention that its only obligation to the policy owners was not to exceed the Policy's maximum rates must be rejected.

### 4. State Farm's extrinsic evidence that does not bear on how a reasonable insured would understand the Policy is irrelevant.

State Farm argues that because it can offer universal life insurance policies "to the public only if they are financially sound and provide the insurer with sufficient reserves to cover its liabilities, including death benefits that may come due decades into the future," that State Farm could consider any factor in developing and adjusting cost on insurance rates. Mot. at 21. Such a reading is contrary to the plain language of the policy.

State Farm's inability to earn a profit resulting in the Policy not being authorized for sale provides no basis to interpret the Policy to mean something different than what it says. State Farm cannot demonstrate that an insured would read the Policy and conclude that State Farm would not make a profit if limited to charging a mortality-only COI Rate. The *Vogt*, *Bally*, *Page*, and *Jaunich* courts have already rejected this argument, and this Court should, too. *See Vogt*, 2018 WL 1747336, at *4 ("While an insurance company would be expected to make a profit, the terms of the insurance policy at issue are so dense, a lay person would not understand that State Farm

expected to derive profit from the COI."); *Bally*, 2019 WL 3891149, at *7 ("State Farm does not explain why a reasonable policyholder would conclude that State Farm must make a profit from the COI, specifically, rather than the Policy as a whole," where "the policy offers State Farm other ways to make money."); *Page*, 2022 WL 718789, at *10, ("But this case is not about how an insurer is permitted to price its products in the first instance or what is the most prudent or profitable business practice for an insurer, but whether State Farm engaged in conduct that is inconsistent with language in the Policy in order to cover its costs and meet its profit goals"); *Jaunich*, 2021 WL 5054461 at *2, ("State Farm's interpretation of the policy is obviously not the only reasonable one, and Jaunich has raised genuine issues of fact as to whether the policy is ambiguous and whether State Farm breached it."). Finally, State Farm has never attempted to demonstrate the Policy would not be profitable if it were limited to adjusting COI Rates based only upon projected changes in mortality as required under the Policy.

5. ***State Farm adjusted its COI Rates based upon factors other than its projected changes in mortality.***

Plaintiff's expert, Mr. Stern, testified that the COI Charge is "often referred to in the life insurance industry as (and from an actuarial perspective is) a "mortality charge" because it is designed to cover an insurer's mortality exposure." Wilkerson SJ Decl., Ex. 2 (Corrected Stern Decl. at ¶ 59). Mr. Stern analyzed State Farm's Mortality Tables and Mortality Studies. *Id*. at ¶ 73-84. Based upon this analysis, he ███████████████████████████████████ ██████████████████████████ *See also* Part III-C (discussing contemporaneous record evidence confirming Mr. Stern's analysis). Mr. Stern opined that State Farm's COI Rate reductions on November 1, 1990, January 1, 2002, and June 1, 2008███████████████████████████ ███████████████████████ Wilkerson SJ Decl., Ex. 2 (Corrected Stern Decl. at ¶¶ 94-136). Finally, based upon data provided by State Farm, S████████████████████████████████

24

██████████████████████████████████████████

████████████████████████████ Wilkerson SJ Decl., Ex. 1 (Rebuttal Stern Decl.,

at ¶ 113, Table 2). At a minimum, whether State Farm breached is a triable issue of fact for the

jury.

### 6.     *State Farm's focus on the "Initial Rates" is a red herring*

Finally, State Farm spends several pages of its brief arguing that because Mr. Stern did not

focus on the propriety or impropriety of its initial rates, that summary judgment must somehow be

granted in its favor. While most of this section does not warrant a response, Plaintiff feels

compelled to set the record straight. Mr. Stern did not address State Farm's initial pricing of its

COI Rates because State Farm was unable to produce the information necessary to do so.

Wilkerson SJ Decl., Ex. 1 (Rebuttal Stern Decl. ¶ 26-47). State Farm did not produce its initial

pricing data, claiming that it could not be located, despite State Farm being required to preserve

these records by actuarial standards. Wilkerson SJ Decl., Ex. 1 (Rebuttal Stern Decl. at Fn. 14).

Yet State Farm did produce policy level data beginning with the year 1993, and Plaintiff's expert

began his damages calculations on this date. Wilkerson SJ Decl., Ex. 2 (Corrected Stern Decl. at

¶¶ 104-116).

Because of the lack of data provided by State Farm, Mr. Stern was obviously unable to

calculate damages due to State Farm's initial setting of its COI Rates, or due to change of the COI

Rate in 1987. Beginning with the adjustment to the COI Rates in 1990, Mr. Stern was able to

determine that the 1990 COI Rates change was not based upon projected changes in mortality.

Wilkerson SJ Decl., Ex. 1 (Rebuttal Stern Decl. at ¶¶ 94-104). Therefore, Mr. Stern calculated

damages based upon COI Rates beginning in 1993, when policy level data became available. *Id.*

at ¶ 104. This eliminates any supposed issues due to State Farm's failure to produce initial pricing

data. Thus, it is of little consequence—either for liability or for damages—that Plaintiff's damages

model does not include a critique of the initial rates. Mr. Stern's damages analysis is reasonable and sound based on the data provided. *See Gutierrez v. Wells Fargo & Co.*, No. C07-05923 WHA, 2010 WL 1233810, at *10 (N.D. Cal. Mar. 26, 2010) (declining to strike plaintiff's expert where "the data [produced by the defendant did] not allow for 'perfect'" analysis); *cf. Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456-57 (2016) (holding that it was permissible for the plaintiff's expert, on a motion for class certification, to "introduce a representative sample to fill an evidentiary gap created by the employer's failure to keep adequate records").

In any event, State Farm has admitted that it considered non-mortality factors in setting initial rates for the Form 94030 universal life policy. *Vogt,* 2018 WL 1747336, at *2. Plaintiff's expert opines that State Farm ███████████████████████████ ████████ Plaintiff's expert also opines that actuarial standards required State Farm to preserve and maintain records regarding how it calculated its initial rates. Therefore, it would be more than reasonable for a jury to conclude that State Farm breached the contract by including non-mortality factors in setting the initial rates as well. It is proper to instruct a jury that "when evidence is lost or destroyed by a party an inference may be drawn by the jury that the evidence which was lost or destroyed by that party would have been adverse to that party." *Kershaw Cty. Bd. of Educ. v. U.S. Gypsum Co.*, 302 S.C. 390, 394, 396 S.E.2d 369, 372 (1990). Therefore, State Farm's Motion should be denied on this basis.

## B. State Farm is Not Entitled to Summary Judgment on the Implied Covenant Claim

Every contract contains an implied covenant of good faith and fair dealing. *See In re TD Bank, N.A.,* 150 F. Supp. 3d at 626; *Commercial Credit Corp. v. Nelson Motors, Inc.,* 147 S.E.2d 481, 484 (S.C. 1966) ("'In the absence of an express provision therefor, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and

justice they should do.'") (cite omitted). Whether a defendant breached good faith and fair dealing is generally a question of fact. *See Conner v. City of Forest Acres,* 560 S.E.2d 606, 611 n.5 (S.C. 2002) ("[I]t is generally a jury question as to whether the employer acted reasonably pursuant to the employment contract"); *see also Shelton v. Oscar Mayer Foods Corp.*, 459 S.E.2d 851, 857 (S.C. Ct. App. 1995), *aff'd*, 481 S.E.2d 706 (S.C. 1997); *Chestnut v. Am. Gen. Life Ins. Co.*, Civil Action No. 4:11–cv–02160–RBH, 2013 WL 314758, at *6 (D.S.C. Jan. 28, 2013).

Here, State Farm abused its discretion under the contract, and failed to carry out its obligations in good faith, when it calculated COI Rates based on impermissible factors. In so doing, State Farm failed to exercise its vast contractual discretion fairly or reasonably. *See King v. Carolina First Bank*, 26 F. Supp. 3d 510, 517 (D.S.C. 2014).

Notably, State Farm does not dispute that it has breached the covenant. It only argues that the implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim of breach of contract. But whether or not it is a separate cause of action, a breach of the covenant can still be maintained as a breach of "another term of the contract at issue." *In re TD Bank, N.A.*, 150 F. Supp. 3d, at 626-27 (declining to dismiss the claim for breach of the covenant of good faith and fair dealing).

State Farm violated Plaintiff's reasonable expectations under the contract. At minimum, the determination of whether there has been a breach is a question of fact for the jury which cannot be determined at this stage. Accordingly, State Farm's Motion should be denied with respect to the breach of the implied covenant of good faith and fair dealing.

### C. State Farm Is Not Entitled to Summary Judgment on Plaintiff's Conversion Claim

Plaintiff's conversion claim does more than merely "duplicate" Plaintiff's contract claims or "relate[] to a general money obligation," as State Farm argues. Mot. at 26-28. Count III is

premised on a tort duty independent of the contractual duties under the Policy. Under South Carolina law, Plaintiffs need only show: (1) their ownership of or right to possess the property, and (2) a wrongful interference with that right. *See In re TD Bank, N.A.*, 150 F. Supp. 3d at 629 (citing *Moore v. Weinberg*, 373 S.C. 209, 644 S.E.2d 740, 749 (2007)); *King*, 26 F. Supp. 3d at 518 ("Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of the condition or the exclusion of the owner's rights."). Indeed, other courts confronted with State Farm's exact argument in the COI context have rejected it. *See, e.g., Taylor v. Midland Nat'l Life Ins. Co*., 2016 WL 9454075, at *4-5 (S.D. Iowa July 29, 2016) (denying motion to dismiss because "the duty not to convert one's property is independent of contract"); *Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2017 WL 1498073, at *2 (W.D. Mo. Apr. 26, 2017) (holding the plaintiff's "conversion claim arises from the independent duty not to appropriate another's funds, a duty that exists regardless of and independently of [the plaintiff's] life insurance contract with State Farm"). Here South Carolina law imposes an extra-contractual duty on State Farm not to wrongfully exercise dominion and control over the funds that make up Plaintiff's Cash Value in violation of Plaintiff's rights in and to those funds.

Plaintiff's claim for conversion of money is also properly stated. "Money may be the subject of conversion when it is capable of being identified." *King*, 26 F. Supp. 3d at 518 (citing *SSI Med. Serv's, Inc. v. Cox,* 301 S.C. 493, 392 S.E.2d 789, 792 (1990). Here, Plaintiffs own their Policies and the money in their Cash Value; State Farm has no title to the fund, nor does State Farm claim title to it. Plaintiffs delivered the money to State Farm with instructions as to how it should be treated for Plaintiffs' beneficiaries' benefit and for its safekeeping, and State Farm treated that money contrary to those instructions by withdrawing unauthorized amounts from

Plaintiffs' Cash Value. *See Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2018 WL

1747336, at *8 (W.D. Mo. Apr. 10, 2018), *aff'd,* 963 F.3d 753 (8th Cir. 2020) ("To the extent that

State Farm deducted money for purported COI charges that in fact were not expressly authorized

by the Policy, it diverted for an unauthorized purpose funds that were placed in its custody for a

different purpose, and it can be held liable for conversion.").[14] The Court should thus deny State

Farm's Motion as to the conversion claim.

### D. State Farm Is Not Entitled to Summary Judgment on the Declaratory Judgment Claim

State Farm presents little reason to dismiss Plaintiff's claim for a declaratory judgment

except it is duplicative. But Plaintiff is allowed to plead duplicative claims and regardless the claim

is not duplicative. Indeed, in the unlikely event class certification is denied under Rule 23(b)(3),

Plaintiff intends to proceed with certification under Rule 23(b)(2) in which declaratory relief would

be the only claim. Indeed, courts consistently allow this claim to proceed. *See*, *e.g.*, *Bally v. State*

*Farm Life Ins. Co.,* 335 F.R.D. 288, 304 (N.D. Cal. 2020) (certifying class inclusive of declaratory

judgment claim).

---

[14]     State Farm's reliance on *Jaunich v. State Farm Life Ins. Co*., No. 20-1567 (PAM/BRT), 2020 WL 6712219 (D. Minn. Nov. 16, 2020) is misplaced. The *Jaunich* court found that "Minnesota has a different view on conversion" than the Missouri law on which the Vogt court relied. *Id*. at *2. The court found that, whereas Missouri law holds that "funds placed in the custody of another for a specific purpose and their diversion for other than such specified purpose subjects the holder to liability in conversion," Minnesota law does not. *Id*. South Carolina law, like Missouri law, governs the present case and yields a different outcome. See *King*, 26 F. Supp. 3d at 518 (D.S.C. 2014) (conversion claim for money properly stated "when [money] is capable of being identified"). Likewise, most of the other cases State Farm relies on do not even involve a claim for conversion, or rely on law outside of South Carolina. The ones that do support Plaintiff's conversion claim. *See, e.g.,Trevillyan v. APX Alarm Sec. Sys., Inc.*, No. CA 2:10-1387-MBS, 2011 WL 11611, at *6 (D.S.C. Jan. 3, 2011) (declining to dismiss plaintiff's conversion claim where defendant unlawfully used a collection agency and debited bank account even though the parties were bound by a contract); *Owens v. Andrews Bank & Tr. Co.,* 265 S.C. 490, 220 S.E.2d 116 (1975) (holding that the actions of branch manager of bank, in withholding delivery of Christmas club account check to depositor and in using this check to pressure her husband into paying his own personal debt constituted conversion).

### E. <u>State Farm is Not Entitled to Summary Judgment Based on the Statute of Limitations</u>

In South Carolina, the discovery rule means that the statute of limitations "does not begin to run from the date the negligent act or the breach of contract occurred; rather, the statute runs from the date the injury resulting from the wrongful conduct either is discovered or may be discovered by the exercise of reasonable diligence." *Dillon Cty. Sch. Dist. No. Two v. Lewis Sheet Metal Works, Inc.,* 286 S.C. 207, 215, 332 S.E.2d 555, 559 (Ct. App. 1985), *overruled on other grounds by Atlas Food Sys. & Servs., Inc. v. Crane Nat. Vendors Div. of Unidynamics Corp.,* 319 S.C. 556, 462 S.E.2d 858 (1995). Moreover, the doctrine of fraudulent concealment applies when the defendant engages in "[d]eliberate acts of deception . . . calculated to conceal from a potential plaintiff that he has a cause of action[.]" *Doe v. Bishop of Charleston,* 407 S.C. 128, 140, 754 S.E.2d 494, 500–01 (2014). This lawsuit presents a textbook case for application of both doctrines. Plaintiff did not discover, and could not have discovered, State Farm's breach of contract because he did not have access to State Farm's COI Rates or the complex machinations which underpin those rates. Rather, State Farm intentionally hid and obscured how it calculated its COI Rates, concealing the existence of a cause of action. It makes little difference that State Farm informed policyholders that mortality was improving. State Farm never disclosed how it calculated COI Rates, or that it used factors other than mortality in setting COI Rates.

For this reason, every court to have considered this issue has correctly concluded that policy owners could not have discovered State Farm's breach and, therefore, the discovery rule applies to toll the statute of limitations. *See Vogt*, 2018 WL 1747336, at *6-*8 (granting summary judgment in favor of class on State Farm's statute of limitations defense), *aff'd,* 963 F.3d at 765 ("Although, with the help of an attorney and an actuarial expert, Vogt was ultimately able to determine that the COI fees included non-enumerated factors, there is no evidence in the record

that would have placed a reasonably prudent person on notice of a potentially actionable injury simply based on the rising COI fees and annual statements.") (quotations omitted); *Bally*, 2019 WL 3891149, at *4 (denying State Farm's motion for summary judgment on statute of limitations for the same reasons); *Bally*, 2021 WL 1668004, at *15-16 (granting summary judgment in favor of the class on State Farm's statute of limitations defense). For these reasons, summary judgment is not warranted on the basis of the statute of limitations. At a minimum, this is a triable issue of fact.

## VI.    <u>CONCLUSION</u>

Based upon the foregoing, Defendant's motion for summary judgment should be denied.


DATED: April 7, 2022

Respectfully submitted,

*/s/ David M. Wilkerson*
David M. Wilkerson
SC Federal ID# 7188
The Van Winkle Law Firm
11 N. Market Street
Asheville, NC 28801
Tele: 828-258-2991
Fax: 828-257-2767
Email: dwilkerson@vwlawfirm.com

Melinda R. Coolidge*
James J. Pizzirusso*
Nathaniel C. Giddings*
HAUSFELD LLP
888 16th Street, NW
Washington, DC 20006
Tele: 202-540-7200
Fax: 202-540-7201
Email: mcoolidge@hausfeld.com
Email: jpizzirusso@hausfeld.com
Email: ngiddings@hausfeld.com

Kimberly A. Fetsick*

HAUSFELD LLP
33 Whitehall Street, Floor 14
New York, New York 10004
Tele: (646) 357-1100
Fax: (212) 202-4322
Email: kfetsick@hausfeld.com

Jeffrey Kaliel*
Sophia Goren Gold*
KALIEL PLC
1875 Connecticut Avenue NW, 10th Floor
Washington, DC 20009
Tele: 202-350-4783
Email: jkaliel@kalielpllc.com
Email: sgold@kalielpllc.com

Larry D. Lahman*
Roger L. Ediger*
MITCHELL DeCLERCK
202 West Broadway Avenue
Enid, Oklahoma 73701
Tele.: 580-234-5144
Fax: 580-234-8890
Email: larry.lahman@sbcglobal.net
Email: rle@mdpllc.com

George Brandt, III
Fed. Bar No. 01451
HENDERSON, BRANDT & VIETH, P.A.
360 E. Henry St., Suite 101
Spartanburg, SC 29302
Tele: 864-583-5144
Fax: 864-582-2927
Email: gbrandt@hbvlaw.com

*Counsel for Plaintiff*

---

\* *pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2022, I caused the foregoing to be electronically filed with

the Clerk of the Court using the CM/ECF system.

*/s/ David M. Wilkerson*
David M. Wilkerson
SC Federal ID# 7188
The Van Winkle Law Firm
11 N. Market Street
Asheville, NC 28801
Tele: 828-258-2991
Fax: 828-257-2767
Email: dwilkerson@vwlawfirm.com