**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION**

GETTYS BRYANT MILLWOOD, on behalf of himself and all others similarly situated,

                    Plaintiff,

vs.

STATE FARM LIFE INSURANCE COMPANY,

                    Defendant.

Civil Action No. 7:19-cv-01445-dcc

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.     **PRELIMINARY STATEMENT**

Plaintiff, Gettys Bryant Millwood ("Millwood" or "Plaintiff"), by and through his undersigned counsel, respectfully submits this Motion for Partial Summary Judgment ("Motion"). In support of this Motion, Plaintiff submits the Declaration of David M. Wilkerson ("Wilkerson SJ Declaration") and Exhibits 1-19 thereto. Because there are no material facts in dispute on the issue of liability, the Court should grant summary judgment in favor of the Class on Counts I (breach of contract) and IV (declaratory judgment) of the Complaint.

## II.     **INTRODUCTION**

State Farm's Form 86040 universal life insurance policy promises that the monthly cost of insurance rates ("COI Rates") will be "based on" the Insured's age, sex, and applicable rate class. The Policy further promises that "such rates can be adjusted for projected changes in mortality." *Id*.

There are no material facts in dispute. The parties agree that when State Farm adjusted its COI rates, its new COI rates were based on factors other than projected changes in mortality. State Farm Mtn. for Summary Judgment, ECF 183 at 8. State Farm admits that it considered its reserves and "surplus requirements (*i.e.*, profits) "when adjusting cost of insurance rates for projected changes in mortality." *Id*. The parties agree that State Farm reduced its COI Rates three times during the Class Period, on November 1, 1990, with those COI rates remaining in force until December 31, 2001; on January 1, 2002, with those COI rates remaining in force until May 31, 2008; and on June 1, 2008, with those COI rates remining in force through the present. *Id*. at ¶¶ 94, 105, 117.

The question in this case is whether the contract permitted State Farm to employ factors other than projected changes in mortality when it adjusted COI rates. Importantly, this case is not the first of its kind. The same language at issue in this case is also found in State Farm's Form

94030 universal life insurance policy, which has been the subject of numerous lawsuits. In one of those cases, plaintiff moved for summary judgment on the breach of contract claim on similar grounds as Plaintiff does here, and the court interpreting the same operative policy language granted the plaintiff's cross-motion for summary judgment as to their interpretation of the contract's terms. *See Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, Dkt. No. 335 (W.D. Mo. June 2, 2018). Additionally, State Farm's proffered interpretation of the COI Rates provision has been a moving target throughout these proceedings, and courts have disagreed that any of State Farm's evolving interpretations provide the only reasonable way to read the COI Rates provision and have concluded Plaintiff's interpretation here is at least reasonable, if not the only reasonable reading. This Court should similarly conclude that the contract language at issue in this case support's Plaintiff's preferred reading.

In South Carolina, insurance contracts are to be construed against the insurer, *State Farm Fire & Casualty Co. v. Barrett,* 340 S.C. 1, 8, 530 S.E.2d 132, 135 (Ct. App. 2000), and any ambiguity must be drawn in the insured's favor. *See Diamond State Ins. Co. v. Homestead Indus., Inc.,* 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995). This Court, exercising its diversity jurisdiction, must apply this standard to the interpretation of the Policy language at issue. *See Levine v. Emps. Ins. Co. of Wausau*, 887 F.3d 623, 627 (4th Cir. 2018). This alone warrants granting summary judgment on Plaintiff's breach of contract claims.

As a result of State Farm's breach, Plaintiff alleges that State Farm pocketed ▨▨▨▨ ▨▨▨▨▨▨▨▨ from South Carolina policyholders. Wilkerson SJ Decl., Ex. 1 (Rebuttal Stern Declaration at ¶ 113, Table 2). For the foregoing reasons, Plaintiff respectfully requests that the Court GRANT Plaintiff's Motion for summary judgment.

## III.    STATEMENT OF RELEVANT FACTS

### A.    The Life Insurance Contracts Between State Farm and the Class

Plaintiff entered into a Policy with State Farm in South Carolina with an initial face value of $101,869 that became effective on May 10, 1988. Wilkerson SJ Decl., Ex. 2, (Millwood Depo. 15:12-18:15.

The Policy is issued on State Farm's "FORM-86040." Wilkerson SJ Decl., Ex. 3 (Policy); Ex. 2 at 15:9-20 The Policy is a valid and enforceable contract between each policy owner and State Farm. Ex. 3 at 1; *see also Canal Ins. Co. v. Nat'l House Movers, LLC*, 414 S.C. 255, 260–61, 777 S.E.2d 418, 421 (Ct. App. 2015) (citing *Auto Owners Ins. Co. v. Rollison,* 378 S.C. 600, 606, 663 S.E.2d 484, 487 (2008)). Its terms are not subject to individual negotiation and are materially the same for all policy owners. Compl. at ¶ 20; Ex. 3. The Policy cannot be altered by the agent's representations at the time of sale, or by any other discussions or writings. Ex. 3 at 11. Moreover, State Farm's obligations (like the policy owner's) cannot be obviated by informal consent, waiver, or some other act because "[o]nly an officer has the right to change this [P]olicy. No agent has the authority to change the [P]olicy or to waive any of its terms." *Id.*

### B.    The Policy Identifies Specific Charges State Farm is Authorized to Deduct from Cash Values

The Policy authorizes State Farm to take from the Policy's Cash Value a Monthly Deduction comprised of the separately identified: (a) COI charge; (b) charges for any riders; and (c) monthly expense charge. *See* Ex. 3 at 9.

#### 1.    *State Farm is permitted to deduct a "cost of insurance" charge each month, and any changes to this charge must be "based on" State Farm's "projected changes in mortality."*

The Policy provides that the COI charge is determined and calculated as follows:

> **Cost of Insurance.** This cost is calculated each month. The cost is determined separately for the Initial Basic Amount and each increase in Basic Amount. The cost of insurance is the monthly cost of insurance rate times the difference between (1) and (2), where:

3

> (1) is the amount of insurance on the deduction date at the start of the month divided by 1.0032737, and
>
> (2) is the account value on the deduction date at the start of the month before the cost of insurance and the monthly charge for any waiver of monthly deduction benefit rider are deducted.
>
> Until the account value exceeds the Initial Basic Amount, the account value is part of the Initial Basic Amount. Once the account value exceeds that amount, if there have been any increases in Basic Amount, the excess will be part of the increases in order in which the increases occurred.

Ex. 3 at 10.

The Policy then states that COI rates "for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class," and that "[s]uch rates can be adjusted for projected changes in mortality." *Id*.

The factors identified in the Policy are characteristics commonly used within the life insurance industry to determine the mortality expectations of an insured or group or class of insureds. Wilkerson SJ Decl., Ex. 4 (Corrected Stern Decl. at ¶¶ 58-63); *see Vogt v. State Farm Life Ins. Co*., No. 2:16-CV-04170-NKL, 2018 WL 1747336, at *2 (W.D. Mo. Apr. 10, 2018) (denying State Farm's summary judgment motion in a case involving the Form 94040 universal life policy and stating: "Age, sex and rating class are factors used to differentiate policyholders in developing mortality tables."); *Alleman v. State Farm Life Ins. Co.*, 334 F. App'x 470, 472 (3d Cir. 2009) (noting that age and sex are mortality factors); *In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*, 920 F. Supp. 2d 1050, 1061 (N.D. Cal. 2013), *vacated pursuant to settlement*, 2013 WL 10349975 (N.D. Cal. Nov. 8, 2013) ("Because age and sex are the guiding factors in the lifespan of a person, a layperson would ordinarily attach the rates to mortality."). The applicable rate class for the Policy are Regular (Smoker) and Non-Smoker. *See* Wilkerson SJ

Decl., Ex. 4 at Fn. 4. These two rate classes are, like age and sex, used to determine the mortality expectations of a group or class of insureds. *See* Wilkerson SJ Decl., Ex. 4 at ¶ 39.

State Farm does not disclose to its insured, including Plaintiff, the factors that State Farm actually used in determining their COI Rates. *See generally Bally*, 335 F.R.D. 288, 304 (N.D. Cal. 2020) (granting certification of a California class, stating "State Farm does not adduce any evidence to show that 'policyholder[s] would have been on notice that State Farm was considering unlisted variables in calculation [of] the COI'"); Ex. 3.

### 2.    State Farm is permitted to deduct an "expense charge" of $4.00 per month per Policy

The Policy authorizes State Farm to deduct a monthly Expense Charge, which is fixed at $4.00 per month. Ex.3 at 3. This is the amount that State Farm is permitted to recover for any expenses associated with writing and administering the Policy; that is, and Plaintiff alleges that, State Farm is only permitted to deduct $4.00 per month in policy expenses, even if State Farm's actual expenses for the Policy exceed this amount. Ex. 3 at 3.

### C.    State Farm Adjusted its Cost of Insurance Charges Based on Factors Other Than Its "Projected Changes in Mortality."

Plaintiff contends the Policy provision requiring that monthly COI Rates "for each policy year" be "based on the Insured's age on the Policy anniversary, sex, and applicable rate class" and can be adjusted only for "projected changes in mortality" means exactly what it says: that once State Farm decided to change its COI Rates, it could only change those rates based on its "projected changes in mortality." But rather than abide by the clear terms of the Policy, State Farm adjusted its COI Rates on factors other than "projected changes in mortality." *See* Ex. 4 at ¶¶ 85-136.

State Farm reduced its COI Rates three times during the Class Period, on November 1, 1990, with those COI Rates remaining in force until December 31, 2001; on January 1, 2002, with those COI Rates remaining in force until May 31, 2008; and on June 1, 2008, with those COI Rates

remining in force through the present. *Id.* at ¶¶ 94, 105, 117. In breach of the clear language of the Policy, State Farm considered factors other than its "projected changes in mortality" when adjusting its COI Rates in 1990, 2001, and 2008.

While State Farm does ***not*** dispute this fact, Plaintiff briefly sets forth some of the evidence conclusively showing that State Farm considered non-mortality factors when adjusting its COI Rates for the Policy in 1990, 2001, and 2008. *See* ECF 183 at 8 (admitting that State Farm considered its reserves and "surplus requirements (*i.e.*, profits) "when adjusting cost of insurance rates for projected changes in mortality").

### 1. State Farm's 1990 COI Rate adjustment was based on factors other than State Farm's "projected changes in mortality."

State Farm's November 1, 1990 COI Rate adjustment was not based on State Farm's projected changes in mortality. Ex. 4 at ¶¶ 94-96. ████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████, Ex. 4 at ¶ 95; Wilkerson SJ Decl., Ex. 5 (SFLICMW00054067 at 0777).

However, rather than rely on these projected changes in mortality, ████████████ ████████████████████████████████████████████████

---



[1]    *See, e.g.*, Wilkerson SJ Decl., ████████████████████████████████████



(Corrected Stern Decl. at ¶¶ 96-100).

### 2. State Farm's 2002 COI Rate adjustment was based on factors other than State Farm's "projected changes in mortality."

State Farm's January 1, 2002 adjustment to its COI Rates was not based on its projected

changes in mortality. Rather, State Farm based its COI Rate reductions ████████████

████████████████████████████████████████

████████████████████████████████ █████████████

████████████████████████████████████████





### 3. State Farm's 2008 COI Rate adjustment was based on factors other than State Farm's "projected changes in mortality."

State Farm's June 1, 2008 COI Rate adjustment was also not based on its projected changes in mortality. I

    **4.**     *State Farm has not adjusted its COI Rates since 2008, notwithstanding State Farm's "projected changes in mortality" continuing to improve*

 Wilkerson SJ Decl., Ex. 4 (Corrected Stern Decl. at ¶ 129).

    **D.**     <u>**State Farm's Breach Has Injured Plaintiff and Members of the South Carolina Class**</u>

Because these Policy overcharges result from State Farm's uniform administration of the Policy, all policy owners are subject to the same COI Rates and the resulting overcharges.

State Farm's inclusion of these other, undisclosed, non-mortality factors in its COI Rate adjustments in 1990, 2002, and 2008, as well as State Farm's failure to adjust its COI Rates based on its projected improving mortality since 2008, has had a substantial impact on the amounts deducted each month from policy owners' Cash Values. Wilkerson SJ Decl., Ex. 4 (Corrected Stern Decl. at ¶¶ 147-152).

Plaintiff's expert estimates that damages for the classes ██████████████Wilkerson SJ Decl., Ex. 1 (Rebuttal Stern Decl. at ¶ 113, Table 2). And, on a materially similar policy form and a nearly identical pricing process, a jury found State Farm's overcharges caused over $34 million in lost Cash Value for a class of approximately 24,000 Missouri policy owners, *see Vogt v. State Farm Life Ins. Co.,* 963 F.3d 753, 761 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 2551 (2021).

---

[11] Wilkerson SJ Decl., Ex. 18 (SFLICMW00400381); Wilkerson SJ Decl., Ex. 19 (SFLICMW00338249 at Slides 11 and 13).

IV.    **LEGAL STANDARDS**

Two legal standards are relevant to Plaintiff's Motion: (1) Rule 56 and (2) the standard applied by South Carolina courts to insurance contracts. Each is discussed below.

A.    **Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movement is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome, and a dispute as to a material fact is genuine only if there is enough evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As shown below, Plaintiff meets the Rule 56 standard, and Plaintiff's Motion must be granted.

B.    **Standard for Interpretation of Insurance Contracts**

In South Carolina, insurance contracts are to be construed against the insurer, *State Farm Fire & Cas. Co. v. Barrett,* 340 S.C. 1, 8, 530 S.E.2d 132, 135 (Ct. App. 2000), and any ambiguity must be drawn in the insured's favor. *Diamond State Ins. Co. v. Homestead Indus., Inc.,* 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995). This Court, exercising its diversity jurisdiction, must apply this standard to the interpretation of the Policy language at issue. *Levine v. Emps. Ins. Co. of Wausau*, 887 F.3d 623, 627 (4th Cir. 2018).

The courts overseeing the other cases against State Farm have applied similar standards (under those state's laws) in declining to grant summary judgment for State Farm on the breach of contract claim—and in some cases, in favor of those plaintiffs. *See Page v. State Farm Life Ins.*

*Co., No.* SA-20-CV-00617-FB, 2022 WL 718789, at *17 (W.D. Tex. Mar. 10, 2022); *Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2018 WL 1747336, at *9 (W.D. Mo. Apr. 10, 2018), aff'd, 963 F.3d 753, 765 (8th Cir. 2020); *Bally v. State Farm Life Ins. Co.,* No. 18-CV-04954-CRB, 2019 WL 3891149, at *1, *8 (N.D. Cal. Aug. 19, 2019); *Jaunich v. State Farm Life Ins. Co.*, No. CV 20-1567 (PAM/JFD), 2021 WL 5054461, at *2 (D. Minn. Nov. 1, 2021).

For the reasons set forth below, Plaintiff meets this standard of interpretation, and summary judgment should be granted in Plaintiff's favor.

## V.     ARGUMENT

### A.     The Class Is Entitled to Summary Judgment on the Issue of Liability for State Farm's Breach of Contract (Count I)

#### 1.     The Policy Is at least Ambiguous, and Therefore, Interpretation of the Policy is a Matter of Law

An insurance policy is a contract between the insured and the insurance company, and the policy's terms are to be construed according to the law of contracts. *Canal Ins. Co. v. Nat'l House Movers, LLC*, 414 S.C. 255, 260–61, 777 S.E.2d 418, 421 (Ct. App. 2015) (citing *Auto Owners Ins. Co. v. Rollison,* 378 S.C. 600, 606, 663 S.E.2d 484, 487 (2008)). "Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary[,] and popular meaning." *Sloan Constr. Co. v. Cent. Nat'l Ins. Co. of Omaha,* 269 S.C. 183, 185, 236 S.E.2d 818, 819 (1977). "Where the contract's language is clear and unambiguous, the language alone determines the contract's force and effect." *McGill v. Moore,* 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009)

"It is a question of law for the court whether the language of a contract is ambiguous." *S.C. Dep't of Nat. Res. v. Town of McClellanville,* 345 S.C. 617, 623, 550 S.E.2d 299, 302–03 (2001) (citation omitted); *see also Canal Ins Co.*, *supra*, at 421 (citing *Hawkins v. Greenwood Dev. Corp.,* 328 S.C. 585, 592, 493 S.E.2d 875, 878 (Ct.App.1997)) ("The construction of a clear and

unambiguous contract is a question of law for the court to determine."). "A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Hawkins,* 328 S.C. at 592, 493 S.E.2d at 878 (quoting 17A AM. JUR. 2D *Contracts* § 338 (1991)). "A contract is read as a whole document so that one may not create an ambiguity by pointing out a single sentence or clause." *McGill,* 381 S.C. at 185, 672 S.E.2d at 574 (citation omitted). "Whether a contract is ambiguous is to be determined from examining the entire contract, not by reviewing isolated portions of the contract." *Canal Ins. Co.* at 421(citing *Farr v. Duke Power Co.,* 265 S.C. 356, 362, 218 S.E.2d 431, 433 (1975) (citation omitted)).

### 2. The Court Must Construe the Ambiguous Policy Terms Against the Insurer and Grant Plaintiff's Motion for Summary Judgment.

Under South Carolina law, it is well established that "[a]mbiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer." *Diamond State Ins. Co. v. Homestead Indus., Inc.,* 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995). "Where the words of an insurance policy are capable of two reasonable interpretations, the interpretation most favorable to the insured will be adopted." *State Farm Fire & Cas. Co. v. Barrett,* 340 S.C. 1, 8, 530 S.E.2d 132, 135 (Ct. App. 2000). Finally, "[w]hen a policy does not specifically define a term, the term should be defined according to the usual understanding of the term's significance to the ordinary person." *Id.* at 8, 530 S.E.2d at 136. As explained in the following section, previous courts have construed the exact language at issue here against State Farm. Thus, this Court can, and should readily construe the terms in the Policy against the insurer because the contract is ambiguous by its terms.

### 3. *State Farm Breached the Policy by Basing Its COI Rates On Factors Other than the Insured's Age, Sex, And Applicable Rate Class.*

The evidence shows that State Farm breached its contract when it determined COI Rates based on impermissible factors. Two provisions in State Farm's Policy prohibit State Farm's conduct. First, the Policy states that COI rates "for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class." Wilkerson SJ Decl., Ex. 4 (Policy at 10). The meaning of this provision is clear: in any given year, COI rates may not be based on anything other than the Insured's age on the policy anniversary, sex, and applicable rate class. In basing COI Rates on other, unlisted factors, State Farm breached its Policy.

Numerous courts agree. In *Vogt*, State Farm moved for summary judgment against the insured, arguing that the exact same "based on" provision should not be read as meaning that those factors are exclusive. *Vogt*, 2018 WL 1747336, at *3. From this, State Farm concluded it was not prohibited from including undisclosed profit and expense factors in the COI Rates. *Id.* at *3. The *Vogt* court, considering the plain language of the COI Rates provision and "its context in the policy as a whole" held that "no reasonable lay person would expect that State Farm was permitted to use any factor it wanted to calculate the cost of insurance." *Id.* at *4. The court also rejected State Farm's claim that the listed factors should be read as the characteristics State Farm uses to assign COI Rates:

> State Farm insists that "the only plausible reading of the sentence at issue is that age, sex and rate class are the only individual–specific factors used to place Policyholders into different risk groups, not that age, sex and rate class are the only factors that State Farm may use to determine COI rates." But the sentence does not even mention risk groups. To the contrary, it mentions only "[t]hese rates for each Policy year," referring to the "Monthly Cost of Insurance Rates" subheading, and the specified factors that form the "bas[is]" thereof.

*Id*. at *5 n.1 (citation omitted).

13

The court later <u>granted</u> summary judgment in the class's favor on policy interpretation and breach. *See Vogt*, Dkt. 335 (granting partial summary judgment in favor of the Class for State Farm's breaches of the Policy's COI rates provision), *aff'd*, 963 F.3d at 764 ("[W]e conclude that the phrase 'based on' in the COI provision is at least ambiguous and thus must be construed against State Farm. The district court did not err in construing the policy language in this manner and granting summary judgment to Vogt on issues of liability."). A jury later found class-wide damages of more than $34 million. *See Vogt v. State Farm Life Ins. Co.,* 963 F.3d 753, 761 (8th Cir. 2020).

State Farm appealed to the Eighth Circuit, where it argued that the district court erred in concluding "that the policy language did not allow State Farm to formulate the COI based on factors in addition to those expressly listed in the policy." *Vogt*, 963 F.3d 753, 763. State Farm also argued that the "'based on' sentence is directed at the factors that are individual to the insured," and therefore that the court should hold that the identified factors "demonstrate how a COI rate is likely to vary from one individual policyholder to the next." *See* State Farm Opening Br., 2019 WL 413071, at 18-19 (quoting *Norem v. Lincoln Ben. Life Co.*, 737 F.3d 1145, 1150 (7th Cir. 2013))(citing *Thao v. Midland Nat'l Life Ins. Co.*, 2013 WL 119871, at *2 (E.D. Wis. Jan. 9, 2013), *aff'd*, 549 F. App'x 534 (7th Cir. 2013)). The Eighth Circuit rejected State Farm's arguments, concluding "a person of ordinary intelligence purchasing an insurance policy would not read the provision and understand that where the policy states that the COI fees will be calculated 'based on' listed mortality factors that the insurer would also be free to incorporate other, unlisted factors into this calculation." *Vogt*, 963 F.3d at 763-64. The Eighth Circuit further rejected State Farm's reliance on *Norem* and *Thao*, concluding the fact that "several courts have

examined the issue in very similar circumstances and have reached differing conclusions supports the conclusion that the phrase is ambiguous." *Id.* at 764.

Additionally, where State Farm has moved for summary judgment in other cases based upon the same policy language in the Form 94030 Policy (which again contains the same policy language at issue here), courts have found the same policy language at least ambiguous. First, State Farm moved for summary judgment in California. *Bally v. State Farm Life Ins. Co.,* No. 18-CV-04954-CRB, 2019 WL 3891149, at *1 (N.D. Cal. Aug. 19, 2019). The court there, like Judge Laughrey and later the Eighth Circuit, concluded a layperson could reasonably read the COI Rates provision as limiting State Farm to charging COI Rates determined from only the listed mortality factors, finding the plaintiff's interpretation was consistent with the plain language of the Policy, common usage of its terms, and other courts' interpretations of similar COI rates provisions. *See Bally v. State Farm Life Ins. Co.*, No. 18-CV-04954-CRB, 2019 WL 3891149, at *5-6 (N.D. Cal. Aug. 19, 2019).[12]

---

[12] In its first summary judgment ruling, the court in *Bally* disagreed with State Farm's argument that the words "based on," in the context of the Monthly COI Rates provision, connoted non-exclusivity. *Bally v. State Farm Life Ins. Co.*, 536 F. Supp. 3d 495, 504 (N.D. Cal. 2021) and denied summary judgment. In its second summary judgment ruling, however, the court erroneously held that the consideration of "applicable rate class" makes no promises about how the "applicable rate class" will be developed, and certainly never promises that those rates will only be developed using mortality factors. *Bally v. State Farm Life Ins. Co.*, 536 F. Supp. 3d 495, 508 (N.D. Cal. 2021). Yet here, the only two applicable rates classes are "Smoker and Non-Smoker." Wilkerson SJ Decl., Ex. 16 (Knackmuhs Depo. 57:9-15). These two rate classes are unquestionably mortality factors, as State Farm is only interested in collecting smoking information to calculate projected mortality. *See* Wilkerson SJ Decl., Ex. 16 (Knachmuhs Depo. 147:13-148:9). ( "Q: I'm assuming that S and NS means smoker/non-smoker? A: The ratio of smoker to non-smoker *mortality*."). The two courts that have so far considered this decision in *Bally* have both rejected its holding. As the court in *Page* concluded, "[n]othing in the contractual language itself supports State Farm's interpretation that it has discretion to consider such factors as its profits and expenses at all stages and in all aspects of its ratemaking." *Id.* Similarly, the court in *Jaunich* said that "any such distinction is immaterial, because the substance of Jaunich's claim does not hang solely on either phrase, but on whether State Farm improperly used undisclosed factors in calculating the COI under the policy." *Jaunich*, 2021 WL 5054461, at *2 .

The court in *Jaunich v. State Farm Life Ins. Co.*, No. CV 20-1567 (PAM/JFD), 2021 WL 5054461, at *2 (D. Minn. Nov. 1, 2021), also held that the phrase was at least ambiguous. The court agreed with the Eighth Circuit that the fact that "several courts have examined the issue in very similar circumstances and have reached differing conclusions" supports a finding that the COI provision is ambiguous. *Id.*

Similarly, in *Page v. State Farm Life Ins. Co., No.* SA-20-CV-00617-FB, 2022 WL 718789, at *17 (W.D. Tex. Mar. 10, 2022), the Magistrate Judge recently issued a Report and Recommendation denying State Farm's motion for summary judgment. The court in *Page* noted, as did the court in *Vogt*, that the term "based on" is not defined in the Policy. *Id.* at *6.

Both the 94030 cases and this case concern the meaning of identical policy language and essentially identical conduct. Liability was premised on the same misconduct—and the same policy provisions—as it is here. Against this backdrop of State Farm's changing interpretations of the COI Rates provision it drafted, the Court should conclude that Plaintiff's interpretation of the COI rates provision is the only reasonable way to read the provision.

Numerous other courts over nearly 30 years have likewise construed similar COI Rate provisions in universal life insurance policies as prohibiting the insurance company from basing COI Rates on undisclosed factors. *See Rosenbaum v. Philadelphia Life Ins. Co.*, 1994 WL 17118392, at *1, *3 (C.D. Cal. Mar. 1, 1994); *Jeanes v. Allied Life Ins. Co.*, 168 F. Supp. 2d 958, 973 (S.D. Iowa 2001), *aff'd in part, rev'd in part on other grounds*, 300 F.3d 938 (8th Cir. 2002); *Dean v. United of Omaha Life Ins. Co.*, 2007 WL 7079558, at *2 (C.D. Cal. Aug. 27, 2007); *Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 483 (C.D. Cal. 2012); *Fleisher v. Phoenix Life Ins. Co.*, 18 F. Supp. 3d 456, 470 (S.D.N.Y. 2014).

4.    ***State Farm Does Not Dispute that It Adjusted Its COI Rates Based On Non-Mortality Factors***

State Farm does not dispute that it adjustedits COI Rates based on factors besides mortality, despite its clear promise that COI Rates could only be adjusted for mortality.

Specifically, the Policy states that COI Rates "can be adjusted for projected changes in mortality." Wilkerson SJ Decl., Ex. 4 (Policy at 10). Plaintiff's position is simple: once State Farm decided to adjust the COI Rates, for whatever rationale or reason, then State Farm was required to adjust those COI Rates based only upon its projected changes in mortality. This reading is consistent with the Policy language, which states that such rates "can be adjusted for projected changes in mortality" and includes no other permissible factors. Under the well-established doctrine of *expressio unius est exclusio alterius*, State Farm was not allowed to adjust its COI Rates based upon any non-mortality factors.. Yet State Farm concedes that this is exactly what it did. *See* Mot. at 8 (admitting that State Farm considered its reserves and "surplus requirements (*i.e.*, profits) "when adjusting cost of insurance rates for projected changes in mortality").

The Policy language here is clear: any adjustment to the COI Rates must be made only on projected changes in mortality. Indeed, Plaintiff's interpretation is the only one that accords with both grammar and logic. If a lease promises "rent will remain the same but can be adjusted annually for inflation," a landlord could not double the rent to compensate for the cost of a new roof. If a high-yield savings account promises to that it may adjust its annual percentage yield "based on interest rates," the APY cannot be affected by how much money a consumer chooses to put into, or take out of, their savings account. Similarly, when State Farm promises that its COI Rate adjustments would be based on mortality and mortality alone, it was obliged to honor that promise.

State Farm's interpretation also leads to unreasonable and illogical results. Under State Farm's interpretation, if State Farm decided to increase COI Rates on the Policy, it could do so in

any amount it so chose, so long as the amount chosen did not exceed the maximum rates. Hypothetically, if State Farm's mortality projections for Policy's insured increased by 1%, State Farm could then increase the COI rate by 100% (or more), subject only to the maximum rate in the Policy. No reasonable consumer would understand the Policy to provide State Farm with unfettered discretion to increase its COI Rates.

Plaintiff's interpretation is fair and reasonable to both State Farm and the consumer. If circumstances occurred where State Farm reasonably projected future mortality rates to increase, then State Farm could raise the COI Rates by the amount of the projected change. Conversely, if circumstances occurred where State Farm reasonably projected mortality rates to decrease, COI Rates would also decrease a commensurate amount.

Further, Plaintiff's expert, Mr. Stern, testified that the COI Charge is "often referred to in the life insurance industry as (and from an actuarial perspective is) a "mortality charge" because it is designed to cover an insurer's mortality exposure." Wilkerson SJ Decl., Ex. 4 (Corrected Stern Decl. at ¶ 59). Mr. Stern analyzed State Farm's Mortality Tables and Mortality Studies. *Id*. at ¶ 73-84. Based upon this analysis, ████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ Corrected Stern Decl. at ¶¶ 94-136). ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████ Wilkerson SJ Decl., Ex. 1 (Rebuttal Stern Decl., at ¶ 113, Table 2).

Because Plaintiff's interpretation in the most reasonable, and the Policy must be construed against State Farm, Plaintiff's Motion should be granted.

### B.     The Class Is Entitled to Declaratory Judgment

Plaintiff seeks a declaratory judgment that State Farm is not permitted to base its COI charges on non-permissible considerations, and that it must reduce its COI charges in light of well-established decreased and decreasing mortality rates. *See Vogt*, Dkt. 335 (granting partial summary judgment in favor of the Missouri class on their breach of contract claims "and the corresponding claim[] for declaratory judgment") (emphasis added). Plaintiff thus requests that summary judgment be entered in favor of the Class on its declaratory judgment claim.

## VI.     CONCLUSION

In light of the foregoing reasons, Plaintiff respectfully requests that the Court Grant Plaintiff's Motion for Partial Summary Judgment as to his breach of contract and declaratory judgment claims against State Farm.


DATED: May 4, 2022

Respectfully submitted,

*/s/ David M. Wilkerson*
David M. Wilkerson
SC Federal ID# 7188
The Van Winkle Law Firm
11 N. Market Street
Asheville, NC 28801
Tele: 828-258-2991
Fax: 828-257-2767
Email: dwilkerson@vwlawfirm.com

Melinda R. Coolidge*
James J. Pizzirusso*
Nathaniel C. Giddings*
HAUSFELD LLP

888 16th Street, NW
Washington, DC 20006
Tele: 202-540-7200
Fax: 202-540-7201
Email: mcoolidge@hausfeld.com
Email: jpizzirusso@hausfeld.com
Email: ngiddings@hausfeld.com

Kimberly A. Fetsick*
HAUSFELD LLP
33 Whitehall Street, Floor 14
New York, New York 10004
Tele: (646) 357-1100
Fax: (212) 202-4322
Email: kfetsick@hausfeld.com

Jeffrey Kaliel*
Sophia Goren Gold*
KALIEL PLC
1875 Connecticut Avenue NW, 10th Floor
Washington, DC 20009
Tele: 202-350-4783
Email: jkaliel@kalielpllc.com
Email: sgold@kalielpllc.com

Larry D. Lahman*
Roger L. Ediger*
MITCHELL DeCLERCK
202 West Broadway Avenue
Enid, Oklahoma 73701
Tele.: 580-234-5144
Fax: 580-234-8890
Email: larry.lahman@sbcglobal.net
Email: rle@mdpllc.com

George Brandt, III
Fed. Bar No. 01451
HENDERSON, BRANDT & VIETH, P.A.
360 E. Henry St., Suite 101
Spartanburg, SC 29302
Tele: 864-583-5144
Fax: 864-582-2927
Email: gbrandt@hbvlaw.com

*Counsel for Plaintiff*

---

*\* pro hac vice*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2022 I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system.

*/s/ David M. Wilkerson*

David M. Wilkerson
SC Federal ID# 7188
The Van Winkle Law Firm
11 N. Market Street
Asheville, NC 28801
Tele: 828-258-2991
Fax: 828-257-2767
Email: dwilkerson@vwlawfirm.com
